Daniel Lee KING *v.* STATE of Arkansas

CR 93-1171 877 S.W.2d 583

Supreme Court of Arkansas
Opinion delivered June 13, 1994
[Rehearing denied July 18, 1994.]

*Larry Dean Kissee*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Daniel Lee King, appellant, was convicted of four counts of rape based on sexual relations he had with his thirteen-year-old stepdaughter. King raises five points for appeal but none is persuasive.

On January 27, 1993, King met voluntarily with a case-worker for the Arkansas Department of Human Services to discuss allegations that he had sexually abused his thirteen-year-old stepdaughter. He admitted to having relations with the stepdaughter and the case-worker referred the matter to the Izard County authorities. King was interrogated by the Izard County Sheriff's Department and he again admitted to a sexual relationship with the victim in a tape recorded interview. The next day King was arrested on one count of rape.

King was arraigned and trial was set for April 12, 1993. The issue of mental disease or defect was raised and the trial court ordered a mental evaluation by a local psychologist. On April 7, 1993, an amended information was filed charging King with three additional counts of rape. Shortly thereafter the trial court determined King was fit to proceed. At trial King was found guilty on all four counts of rape and sentenced to twenty-five years on each count, consecutively. King appeals from that conviction.

### Motion For Mistrial

King first argues the trial court erred in failing to grant a mistrial for the following remarks made by the prosecutor in closing argument:

> This is the type of message that you can send out here to these folks who might even have the slightest idea that they wanted to go in there and molest their little stepdaughter or the little girl next door, *your grandbaby, your daughter*, or whoever it might be. [Our emphasis.]

The defense objected on the basis that the "golden rule" prohibited the prosecutor from referring to "your grandbaby or your children." The trial court sustained the objection and while it refused the defense's request for a mistrial, it did admonish the jury:

> Okay, the objection would be sustained and the jury would be admonished not to place themselves in the position of the victim.

The prosecutor resumed his summation and said:

> Ladies and gentlemen, I'm not asking you to place yourself, that's not the point to what I'm saying. You know what I'm saying, and I respectfully ask you to return a verdict of guilty on each count and to assess an appropriate sentence to follow that verdict.

On appeal King argues it was error for the trial court not to order a mistrial.

A mistrial is a drastic remedy to which the court should resort only when there has been an error so prejudicial that

justice cannot be served by continuing the trial. *Clark* v. *State*, 315 Ark. 602, 870 S.W.2d 372 (1994). It should only be ordered when the fundamental fairness of the trial itself has been manifestly affected. *Furlough* v. *State*, 314 Ark. 136, 861 S.W.2d 297 (1993). The trial court has wide discretion in granting or denying a motion for a mistrial and its discretion will not be disturbed except where there is an abuse of discretion or manifest prejudice to the complaining party. *Banks* v. *State*, 315 Ark. 666, 869 S.W.2d 700 (1994). An admonition to the jury usually cures a prejudicial statement unless it is so patently inflammatory that justice could not be served by continuing the trial. *Foster* v. *State*, 294 Ark. 146, 741 S.W.2d 251 (1987); *Carmichael* v. *State*, 296 Ark. 479, 757 S.W.2d 944 (1988); *Ronning* v. *State*, 295 Ark. 228, 748 S.W.2d 633 (1988).

█ The "golden rule" argument suggests to jurors that they place themselves in the position of a party or victim. *See Smith* v. *Petit*, 300 Ark. 245, 778 S.W.2d 616 (1989). The golden rule argument is impermissible because it tends to subvert the objectivity of the jury. *Mueller* v. *Sigmond*, 486 N.W.2d 841 (MN. 1992). It is seen as an attempt to dissuade the jurors from their duty to weigh the evidence and instead to view the case from the standpoint of a litigant or party. *Metropolitan Life Ins. Co.* v. *Moss*, 109 S.W.2d 1035 (TX. 1937). The rule is applied to criminal cases as well as civil cases. *See Lycans* v. *Com. of Ky*, 562 S.W.2d 303 (1978).

King points to an earlier case where we held the golden rule warranted a mistrial. *Adams* v. *State*, 229 Ark. 777, 318 S.W.2d 599 (1958). In that case the prosecutor stated in closing argument on a rape charge:

> Now gentlemen, if you turn this man loose, go home and tell your daughters that you made it really hard for them today because you turned a man loose that can run over them and take anything from them he wants to, and then come up here and tell a cock and bull story and get away with it.

In response to an objection, the trial court told the jury:

> As I have told the jury before, you are not to consider the case on the arguments of counsels but on the law and

the evidence introduced.

The prosecutor had also made remarks in his opening statement which were in the nature of testifying to the jury. We held the remarks required reversal:

> The appeal to the jury to put themselves in plaintiff's place was improper. One doing that would be no fairer judge of the case than would plaintiff herself. . . . Here the mild rebuke of the court was not sufficient to remove from the minds of the jury, the damage done.

■ We believe *Adams* is distinguishable. In *Adams* there was only a general admonition to the jury, whereas here, the trial court addressed the specific nature of the objection, i.e., that the jury was not to put itself in the position of the victim. In addition, the prosecutor himself addressed the jury and withdrew the objectionable comment and the trial court gave the added standard instruction that remarks made during arguments by the attorneys were not evidence and should be disregarded. We also note that in *Adams* the prosecutor had made other comments at an earlier point in the trial which this court also found improper. We find no abuse of discretion in the trial court's denial of a mistrial on the basis of the prosecutor's remark.

### Defense Of Mental Disease Or Defect

Appellant contends the trial court failed to substantially comply with Ark. Code Ann. § 5-2-305 (1987), which outlines the procedures to be followed when the defense of mental disease or defect is raised. He argues that while a *psychologist* was appointed to evaluate his mental condition, Section (b)(1)(A) requires an evaluation by a *psychiatrist*. That section reads:

> (b)(1) Upon suspension of further proceedings in the prosecution, the court shall enter an order:
>
> (A) Directing that the defendant undergo examination and observation by one or more psychiatrists at a local regional mental health center. A licensed psychologist at a mental health center who has successfully completed a forensic certification course approved by the Department of Human Services may also be directed to conduct an examination on mental condition.

The trial court ordered Dr. Sam Boyd, a certified forensic psychologist with the Psychological Clinic in Conway, Arkansas, to interview and evaluate appellant. Appellant argues that under Section (b)(1)(A) an examination by a psychiatrist is required because the statute is not in the disjunctive and does not offer an alternative between a psychiatrist and a psychologist.

■ We find no objection below on this point. We do find the following:

> BY THE COURT: The Court will now proceed with the case of State of Arkansas v. Daniel Lee King, CR 93-6. The first matter is to take up the report that has been received from Dr. Sam Boyd, who has evaluated Mr. King pursuant to the order for evaluation as entered by this Court.

> BY MR. HIVELY: Judge, we would move, I think it has been filed, make it a part of the record, if it has not been filed would ask that it be filed, and we stand on the report from Dr. Boyd.

> BY THE COURT: Okay, does the defense have any report to present regarding this issue of competency?

> BY MR. GARNER: No, Sir, Judge, not on Dr. Boyd. We have the same objection that I made at the time the appointment was made, but as to Dr. Boyd's report, as it stands, I don't have any proof to offer on the report.

However, no earlier objection appears in the record. In *Hubbard* v. *State*, 306 Ark. 153, 812 S.W.2d 107 (1991), we held the appointment of a psychiatrist was not required under § 5-2-305. We noted that under *Ball* v. *State*, 278 Ark. 423, 646 S.W.2d 693 (1983), substantial compliance with this statute was sufficient and that an evaluation by a psychologist was enough.

■ Appellant also maintains his evaluation under the statute was not in compliance with *Ake* v. *Oklahoma*, 470 U.S. 68 (1985), because he was denied a request for an independent psychological examination. We do not equate the argument with that made in *Starr* v. *A.L. Lockhart*, No. 92-1466 (8th Cir. 1994).[1]

---

[1]At this writing, this case has not yet been designated for publication and is subject to rehearing.

In *Starr* the defendant, who was appealing from a death sentence, was mentally retarded, requested assistance under *Ake* to "assist in evaluation, preparation and presentation of the defense." The court found that under *Ake* the defendant should receive the help of the expert to function as a "basic tool" in defending his case. Here, appellant filed a motion for the appointment of a psychiatrist to assist in his defense but offered no evidence in support thereof. Thus Dr. Boyd's report was the only evidence before the Court relevant to appellant's competency. Appellant also moved for an additional examination. We have held numerous times that an evaluation as was done here does not require a second opinion. *Branscomb* v. *State*, 299 Ark. 482, 774 S.W.2d 426 (1989); *See* v. *State*, 296 Ark. 498, 757 S.W.2d 947 (1988). Appellant has referred to no facts nor made any argument that would distinguish this case from those such as *Branscomb* and *See*.

█ Appellant urges that under § 5-2-305(a)(2) the trial court is obliged to suspend further proceedings when fitness to proceed has been put into question. The point was not raised below and is waived on appeal.

### Motion For A Continuance

Appellant contends the trial court erred in denying his motion for continuance on the morning of trial. Appellant claims his mental evaluation was not filed until the day of trial and that his attorney's first appearance with him was only twelve days before trial. These contentions are not supported by the record. Counsel first consulted with appellant on March 1 and the mental evaluation was given to counsel on April 9. Moreover, at an in-chambers hearing on the motion for continuance, counsel made no argument that he needed more time to respond to the mental evaluation, or to obtain evidence, he simply asked the defendant whether he felt a continuance was needed:

> Q: Now, Daniel, I've been over and visited with you on, I don't remember exactly how many occasions, four or five occasions, I guess, and we have talked about your case and you expressed to me last week, I believe at least on one or two occasions, that you felt like that we needed a continuance in this case in order to make further preparation, is that right?

A: I do. I feel that what few times you've been here, that you have only been able to visit with me maybe 15, 20 minutes, 30 minutes at the most. I know, of course, that you've got several other cases to deal with. I feel that we hadn't had proper time for me to be able to defend myself.

Q: Okay. And that's basically the reason that you feel like we need a continuance, for more time to prepare so that you and I can have more time to work together and you can tell me other additional factors perhaps about the case?

A: Yes.

BY MR. GARNER: Okay. Judge, that's all I have on that.

■ Appellant acknowledges the broad discretion of the trial court over requests for continuances, but compares this case to *Gonzales* v. *State*, 303 Ark. 537, 798 Ark. 101 (1990), where we held the trial court had abused its discretion in denying a continuance. We disagree. The burden is on the movant to show good cause for a continuance. *Oliver* v. *State*, 312 Ark. 466, 851 S.W.2d 415 (1993); *See also* Ark. R. Civ. P. 27.3. The motion is addressed to the sound discretion of the trial judge and will not be reversed absent an abuse of that discretion. *King* v. *State*, 314 Ark. 205, 205 S.W.2d 229 (1993). Appellant must demonstrate resulting prejudice and no prejudice is presumed in this context. *Id.*

Appellant's attorney was appointed around mid-February 1993. He first met with appellant on March 1, 1993. He was aware at that time the trial was set for April 12, 1993. The attorney received the forensic mental evaluation on Friday, April 9, 1993. At the end of the hearing the trial court found the attorney had forty-five to sixty days to prepare, and that calculation is supported by the record.

■ In *Gonzales*, the public defender was notified only one day before trial he was going to defend his client. It was on that basis we reversed the trial court's denial of a motion for a continuance. There is little similarity between the one day preparation time in *Gonzales* and the forty-five to sixty day period in this case. Appellant has not demonstrated how trial preparation was impaired. *See Marshall* v. *State*, 316 Ark. 753, 875 S.W.2d 814 (1994).

Appellant's contention that it was error to deny a request for a continuance while permitting the information to be amended five days before trial by adding three additional counts of rape was not made below and is waived on appeal.

## Taped Confession

As his fourth point of error appellant argues the trial court erred in allowing his taped confession to be played and that the confession itself should have been suppressed. At the pretrial hearing appellant first became aware the prosecution intended to play the taped confession for the jury. The trial court ruled at that time so appellant would have an opportunity before trial to compare the tape and the transcription. After hearing the tape, appellant agreed there were no substantive inconsistencies and acknowledged the statement itself was not a surprise. He argued to the trial court only that he did not know the tape would be played to the jury. Appellant has cited no authority for this assignment of error nor demonstrated how the use of the tape under these circumstances resulted in any prejudice.

Appellant also claims his statement to the police was the result of a promise or reward because he was under the impression that he would be given psychiatric help. He does not assert the police promised him such help, rather the promise had been made by the social worker he first talked to and the police "did nothing to dispel his belief that help was forthcoming."

We know of no authority, nor has appellant cited any, suggesting the existence of such a duty on the part of police. Furthermore, we note it is a *false* promise that renders a confession involuntary, *Tippett* v. *State* 285 Ark. 294, 686 S.W.2d 420 (1985), and here appellant has readily conceded the case-worker arranged for psychological treatment. We find no error.

## Victim's Competence To Testify

As his last point appellant argues the trial court erred in finding the victim competent to testify. Prior to trial he moved for a determination of the competency of the thirteen-year-old victim, who was scheduled to testify. A hearing was conducted, the victim was questioned by the trial court and defense counsel, and the trial court found her competent to testify.

 The question of the competency of a witness is a matter lying within the sound discretion of the trial court and in the absence of clear abuse, we will not reverse on appeal. *Jackson* v. *State*, 290 Ark. 375, 720 S.W.2d 282 (1986). The trial court must begin with the presumption that every person is competent to be a witness. *Id.*; A.R.E. Rule 601. The party alleging a witness is incompetent has the burden of persuasion. *Logan* v. *State*, 299 Ark. 266, 773 S.W.2d 413 (1989). The issue of competency of a witness is one in which the trial judge's evaluation is particularly important due to the opportunity he or she is afforded to observe the witness and the testimony. In a child rape case, the matter of the competency of the child is primarily for the trial judge to decide as he or she is better able than we are to judge the child's intelligence and understanding of the necessity for telling the truth. *Jackson* v. *State, supra.*

 The criteria for judging witness competency are: the ability to understand the obligation of an oath and to comprehend the constraint imposed by it; an understanding of the consequences of false swearing; and the ability to receive accurate impressions and to retain them, to the extent that the capacity exists to transmit to the fact finder a reasonable statement of what was seen, felt or heard. *Chambers* v. *State*, 275 Ark. 177, 628 S.W.2d 306 (1982).

Appellant argues the above test was not met in this case because the child admitted she did not understand the obligation of the oath or the consequences of not telling the truth, and additionally, could not remember all the details of the alleged crimes. These characterizations of the victim's testimony are correct, so far as they go, but they have been taken out of context. Under questioning by the court the victim first stated she knew what it meant to take an oath and to tell the truth. She responded in the negative when asked if she knew what happened if she didn't tell the truth when placed under oath. When the court clarified its question and asked if she knew what happened when she didn't tell the truth to her mother, the witness replied she would be punished and it was "bad" not to tell the truth. She reiterated her understanding in the same way when asked that question by the defense. She was also certain she could remember and relate the events that took place with appellant, even though she might not recall all the details.

 The trial judge concluded the victim was competent to testify and met all the witness criteria. He noted she was fairly

intelligent, in the seventh grade and received A's and B's in class; he found she understood the necessity of being truthful in her testimony and that not telling the truth was wrong and was punishable; and that she had the ability "to transmit an accurate statement of what had happened to her." Based on the foregoing, we cannot say the trial court abused its discretion in finding the witness competent.

Affirmed.