John RICHMOND *v.* STATE of Arkansas

CR 95-38                                                        899 S.W.2d 64

Supreme Court of Arkansas
Opinion delivered May 22, 1995

*Tom Garner*, for appellant.

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. John Richmond was convicted as an habitual offender on charges of escape in the second degree, aggravated robbery, burglary, theft of property, and possession of firearm by a felon. He was sentenced to sixty-five years in prison in addition to the term he was serving. Mr. Richmond seeks a reversal on the ground that the prosecutor improperly referred in closing argument to the fact that Mr. Richmond did not testify at the trial. He also argues he did not receive a proper examination in response to his request for psychological evaluation. Additional arguments are lack of a *contra pacem* clause in the information and a tainted in-court identification of him by the victim. We hold the prosecutor's remark was not improper, the argument made here with respect to the mental examination is not to be considered as it was not made to the Trial Court, the *contra pacem* clause objection was abandoned, and the in-court identification was reliable. We affirm the conviction.

Mr. Richmond and another inmate escaped from the Arkansas Prison Unit located at Calico Rock. Shortly thereafter, two men posing as construction workers entered the home of Gordon Nichols, who lived within a short distance from the prison. The two men, using a knife and Mr. Nichols' gun, robbed him of $46, his coat, and his car.

On the following morning, in Ozark County, Missouri, officers located Mr. Nichols' abandoned automobile while investigating the theft of a Lincoln automobile. Later in the morning, Richmond and his companion were stopped while driving a Lincoln in Oklahoma. The Oklahoma State Trooper who made the

stop determined that the car was stolen and the two men in the car matched the descriptions of escapees from Arkansas. Mr. Richmond and his companion were arrested, returned to Arkansas, and charged.

## 1. Identification

Shortly after he was robbed, Mr. Nichols was shown a photograph of one of the escapees by Assistant Warden Jack Yancey. Mr. Nichols identified that person as one of the men who had robbed him. Warden Yancey could not recall whether the photograph he showed to Mr. Nichols was of Mr. Richmond or the other escapee.

Two days after he was interviewed by Warden Yancey, Mr. Nichols was asked to view a photographic lineup. Officer Tommy Cleveland, who prepared the lineup, testified that Mr. Nichols made an immediate identification of Mr. Richmond and the other escapee.

Mr. Richmond moved to suppress both the photographic lineup and the in-court identification. He contended the showing of the single photo to Mr. Nichols, followed by the photographic lineup, violated his right to due process of law as it constituted a suggestive procedure that tainted any later identification of Mr. Richmond and his companion as the perpetrators of the crime. The Trial Court denied the motions. No argument is made to the effect that the identifications were unreliable.

■ A pre-trial identification does not comply with due process of law when there are suggestive elements in the identification procedure that make it all but inevitable that the victim will identify one person as the criminal. Even if the identification technique used was impermissibly suggestive, however, testimony concerning it is admissible if the identification was reliable. *Bishop* v. *State*, 310 Ark. 479, 839 S.W.2d 6 (1992); *Manson* v. *Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243 (1977).

■ The factors to be considered in determining reliability are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the prior description; (4) the level of certainty; and (5) the time lapse between the crime and the confrontation. *Bishop* v. *State, supra.* We do not reverse a ruling on the admissibility

of an identification unless it is clearly erroneous, and we do not participate in the process of determining reliability unless there is a very substantial likelihood of irreparable misidentification.

Warden Yancey did not recall which inmate's photograph he showed Mr. Nichols; nor is there any additional indication that the photo was of Mr. Richmond. It is thus difficult to conclude with certainty that the lineup procedure was unduly suggestive.

■ Even if it can be said that the procedure was suggestive, Mr. Nichols made a reliable identification. He testified he could see the faces of the two people who came into his home and there was adequate lighting and nothing to obstruct his vision. Mr. Nichols had sufficient opportunity to view the faces of the robbers. He testified that while he was under the impression that they were construction workers he conversed with them concerning work being done down the road from his home. The decision to admit the in-court identification was not clearly erroneous.

### 2. Mental evaluation

Dr. Henderson examined Mr. Richmond at the Arkansas State Hospital. The examination was brief, consisting of some elementary questions. Mr. Richmond objected to the report finding him competent and able to assist effectively in his own defense. He moved for appointment of an independent psychologist to conduct an examination. The motion was denied.

Mr. Richmond argues his psychological evaluation was inadequate because no inquiry was made as to whether he was suffering from any mental disease or defect that would have mitigated his sentence.

Arkansas Code Ann. § 5-2-305 outlines the procedures to be followed when the defense of mental disease or defect is raised. Normally, an evaluation performed under this section does not require a second opinion. *King* v. *State*, 317 Ark. 293, 877 S.W.2d 583 (1994). Mr. Richmond's primary citation on this point is *Starr* v. *Lockhart*, 23 F.3d 1280 (8th Cir. 1994), in which it was held that an additional opinion may be justified when it has been shown that further examination could aid in the defense.

We decline to consider this argument because Mr. Richmond's abstract of the record does not show that it was presented to the Trial Court. *Whitson* v. *State,* 314 Ark. 458, 863 S.W.2d 794, 798 (1993). Even if we were to consider it, we could not reverse on the basis of the *Starr* decision in which the defendant presented a history of mental illness not even hinted in the record now before us.

### 3. Contra pacem clause

Article 7, § 49, of the Arkansas Constitution declares that indictments "shall include 'Against the peace and dignity of the State of Arkansas.'" We have held each count in an indictment must stand on its own, and therefore each must contain the *contra pacem* clause. *Caldwell* v. *State,* 295 Ark. 149, 747 S.W.2d 99 (1988). On the day of the trial, Mr. Richmond's attorney informed the Trial Court that the information was defective for failure to contain a *contra pacem* clause at the end of each charge and the amended information had no such clause at all. The prosecuting attorney sought to amend the information to include the *contra pacem* clause at the end of each charge by reading each charge into the record and adding to each, "against the peace and dignity of the State of Arkansas." The following colloquy then occurred:

TRIAL COURT: Any Response?

DEFENSE: No. Judge, I just made my objection, and if that cured it, well, then —

TRIAL COURT: Well, the court will grant the amendment. I believe the defendant is aware of all the charges that were initially filed and that they were covered by the amendment anyway. And now this does not change it other than just adding the contra pacem clause after each alleged offense.

DEFENSE: Well, I think from reading Caldwell [v. *State,* 295 Ark. 149, 747 S.W.2d 99 (1988)] that probably if the prosecutor does amend after it is brought to the Court's attention, that probably satisfies that.

It appears the objection was relinquished as the relief requested was granted; thus we need not pursue the question whether any

prejudice resulted. *Sweat* v. *State*, 307 Ark. 406, 820 S.W.2d 459 (1991).

### 4. Prosecutor's remark

During his rebuttal closing argument, the prosecuting attorney stated:

> And I am asking you again, as I have previously done, to return a guilty verdict on each and every one of those charges, and come back in here and let me talk to you about the appropriate sentences to assess on each one of those charges, that the State has met the burden of proof on each and every element, and I have outlined those to you, and the testimony and evidence that has been submitted in here is uncontroverted, uncontroverted.

The defense moved for a mistrial on the basis that the prosecutor had made a comment on Mr. Richmond's failure to testify.

Mr. Richmond attempts to distinguish cases in which we held that similar comments, such as "the evidence is undisputed," or "there has been absolutely no testimony to contradict that. . ." did not constitute prejudicial comments on the defendant's failure to testify.

A prosecutor may mention the fact that the State's evidence has remained undisputed. For example, in *Beebe* v. *State*, 301 Ark. 430, 784 S.W.2d 765 (1990), the prosecutor stated, "I submit to you that the evidence has not been disputed." In holding that was not an improper comment on the defendant's failure to testify, the court noted that the remark was not necessarily improper because the state's evidence could have been disputed by evidence other than by the testimony of the accused. Similarly, *Davis* v. *State*, 174 Ark. 891, 298 S.W. 359 (1927), held that the prosecutor's argument that the State's evidence was undenied and uncontradicted was merely a comment that the testimony of the witnesses should be believed because it went undisputed. Mr. Richmond argues those comments were held proper because the defense had failed to create a dispute in the evidence through cross-examination. He contends he thoroughly cross-examined the State's witnesses, thereby creating an evidentiary dispute. He contends, therefore, that the prosecutor's argument

that the evidence went uncontroverted could only be interpreted as a comment on his failure to testify.

We cannot agree that the remark somehow eliminated the cross-examination of the State's witnesses from the memory of the jurors and thus caused them to focus on the accused's failure to testify. It is far more likely, as we suggested in the *Beebe* and *Davis* cases, that the attention was directed to the fact that no witnesses were presented by the defense to controvert the State's evidence.

■■ A mistrial is an extreme remedy that should only be granted when justice cannot be served by continuing the trial. We do not reverse a decision declining to grant a mistrial absent an abuse of the Trial Court's broad discretion in considering the motion. *Cook* v. *State,* 316 Ark. 384, 872 S.W.2d 72 (1994). There was no such abuse in this case.

Affirmed.