David Ricky PUCKETT *v.* STATE of Arkansas

CR 95-1256                                             918 S.W.2d 707

Supreme Court of Arkansas
Opinion delivered April 1, 1996

*Kelly A. Procter*, for appellant.

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Asst. Att'y

Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant David Ricky Puckett appeals a judgment against him for rape and a sentence of 40 years. He raises multiple issues, including insufficiency of the evidence, prosecutorial misconduct, and various rulings of the trial court which he contends prejudiced his case. We hold that no reversible error transpired, and we affirm the judgment.

Nina Graves, age seventy, was a widow who lived in Fort Smith. Around October 1, 1994, she was at the home of Mary Frances Dixon, who was a friend, and she saw Puckett. Graves had met Puckett through Dixon several months earlier. She again saw Puckett some days later as she was walking into a liquor store on Sixth and Division Streets in Fort Smith. After she finished her business there, Puckett walked her home, which was two blocks away. When they arrived at her house, they sat on the steps and talked. Puckett did not enter her house and eventually left. A few days later, he returned to the home and asked if Graves had any work for him to do. She told him "no," and he left.

On Friday, October 7, 1994, Puckett came by Graves's house and visited with Graves and a person named Teresa from the Area Agency on Aging. At about four o'clock, Teresa left, but Puckett remained. He helped Graves retrieve a package from the Post Office and drove her car because she was having trouble with her balance due to an inner ear problem. Graves testified that Puckett then drove to the liquor store against her wishes because she felt ill. When she was cross-examined at trial, Graves testified that she went to the liquor store with Puckett because he had threatened her with her gun which he had found. Puckett bought a six-pack of beer. She admitted that she did not try to get help while at the liquor store. When they returned to her house, Puckett helped Graves inside because she was feeling "wobbly." Graves testified that she wanted to go to bed, but Puckett would not leave.

According to her testimony, Puckett then became upset because he thought that Graves had been flirting with him. He forced Graves into the back bedroom. He hit her twice in the head with his fist and kicked her in the ribs, breaking three. He threatened to kill her with her pistol, if she made a wrong move. Graves testified that after she was struck and intimidated with the gun, Puckett made her take her clothes off. When she was down to

her brassiere, he cut it off with a kitchen knife because she was not removing her clothes quickly enough. He then forced Graves to perform "oral and normal sex" with him. Graves testified that she was forced to have sexual intercourse with him three times and oral sex once before he left at around 11:00 a.m. on Saturday morning. She testified that she and Puckett slept in the same bed, but that she did not try to escape.

After Puckett left, Graves called Mary Dixon to learn her assailant's last name. She also eventually called her niece, Faye Holmes, on Sunday morning, and after Holmes came over, Graves told her what had happened. Holmes urged Graves to report the incident, and Graves ultimately acquiesced and went to the Fort Smith Police Department. She did not go to Sparks Hospital in Fort Smith until the next day, Monday, at which time she learned that her ribs were fractured. Graves later identified Puckett as the culprit in a photo line-up.

Mary Dixon and Faye Holmes confirmed Graves's rendition of events. Mary Dixon added that when Graves called on Sunday night to tell her what had happened, Puckett was at her house. Dixon stated that after she finished talking to Graves, Puckett acted nervous. When confronted with Graves's story, he told Dixon, "That's a damn lie." Dixon testified that she called the police on November 5, 1994, because she found a bag containing a gun next to a pecan tree near her home. She testified that at Graves's behest, she took Graves to see the police detectives who in turn asked Dixon to take Graves to the hospital.

Randy Cook, a former Fort Smith Police Officer, testified that in investigating the rape of Graves, he collected a kitchen knife, a brassiere with a cut strap, and bed sheets. He also testified that Graves picked Puckett out of a photographic lineup. Graves, according to his assessment, was in obvious pain. Jane Parsons, a forensic serologist with the State Crime Laboratory, testified that she tested the sheets for semen, and the test proved positive. She also testified that Graves's rape-kit swabs tested negative for semen.

The defense case included testimony by Fort Smith Police Officer Tom Judkins, who stated that he did not observe bruises on Graves's head when she came to the police station and that Graves did not show any outward appearance of having been beaten. He further testified that Graves told him she had been threatened with a

knife. By way of video deposition, Lina Shaffer, an emergency room nurse at Sparks Hospital, testified that Graves denied any oral or anal penetration by her assailant. Shaffer observed bruises on her and found that Graves had fractured ribs. Phillip Spears of Ace Liquor Store testified that Puckett tried to sell him a gun or borrow some money from him using the gun as collateral. Spears declined. According to Spears, an older lady was with him.

The jury found Puckett guilty of rape. His sentence was fixed at 40 years.

## I. Sufficiency of the Evidence

We first consider Puckett's contentions that (1) the trial court erred in denying his motion for a directed verdict, and (2) the evidence was insufficient to sustain his conviction. A motion for directed verdict is a challenge to the sufficiency of the evidence. *Littlepage v. State*, 314 Ark. 361, 863 S.W.2d 276 (1993). In determining the sufficiency of the evidence, this court reviews the evidence in the light most favorable to the State and sustains the judgment of conviction if there is substantial evidence to support it. *Mills v. State*, 322 Ark. 647, 910 S.W.2d 682 (1995). Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id.* Only the evidence supporting the conviction need be considered. *Id.*

In his motion for directed verdict, Puckett challenged the sufficiency of the evidence as it related to the element of forcible compulsion. Forcible compulsion is defined as "physical force or a threat, express or implied, of death or physical injury to or kidnapping of any person." Ark. Code Ann. § 5-14-101(2) (Repl. 1993). Here, there is ample evidence of forcible compulsion. Graves testified that Puckett held a gun on her, told her to undress, and then forced her to engage in "oral and normal" sexual intercourse. She further testified that he hit her twice in the head and kicked her in the ribs. Other testimony substantiated the fact that Graves was in pain and that her ribs were fractured. Additionally, Graves testified that Puckett cut her brassiere off with a kitchen knife when she did not remove it fast enough. The knife and the cut brassiere were introduced into evidence. A liquor store clerk saw him with the gun, which was also introduced into evidence. Clearly, there was sufficient evidence to compel a conclusion that

Puckett used physical force as well as the threat of physical force to rape Graves.

▪ Puckett further argues that there was insufficient evidence to sustain the conviction. The thrust of this argument is that there was no corroboration of Graves's testimony about the rape. We have held many times that the testimony of the rape victim alone suffices and need not be corroborated. *See, e.g., Laughlin v. State*, 316 Ark. 489, 872 S.W.2d 848 (1994). Graves's testimony constitutes substantial evidence. To the extent there were inconsistencies in her testimony, this was a matter of credibility for the jury to resolve. *Burns v. State*, 323 Ark. 206, 913 S.W.2d 789 (1996).

### II. Prosecutorial Misconduct

Puckett next argues that the prosecuting attorney made improper comments during closing argument. The relevant argument and resulting colloquy follow:

> Those of you who have heard all your live[s] about women who do not report rapes — I think can understand why. After seeing and hearing what you have today, you know, you can't imagine why anyone would make a report and come in and get to tell all this dirty little stuff that's happened to you, and you come in here and hear yourself air your life in front of two children. Why would anyone want to go through that?

> DEFENSE COUNSEL: Your Honor, I object. I don't think there's any comparison made to anything else like this.

> THE COURT: Well, I think it's counsel's statement, and not evidence. You will base your decision on the evidence.

After his objection, Puckett's counsel sought no further relief.

▪ This court has held that the failure to seek relief in the form of an admonition or motion to declare a mistrial precludes this court's consideration of the issue. *See Brown v. State*, 316 Ark. 724, 875 S.W.2d 828 (1994); *Littlepage v. State, supra*. Here, Puckett sought no relief. Instead, the trial court, acting *sua sponte*, instructed the jury to base its decision on the evidence.

▪ The trial court has broad discretion in controlling closing arguments and is in a better position to decide the issue of prejudice

because of its first-hand observation. *Woodruff* v. *State*, 313 Ark. 585, 856 S.W.2d 299 (1993). We have held that, in the absence of manifest or gross abuse, we will not reverse the action of the trial court in matters pertaining to its control and supervision of counsel's arguments. *Id.* Indeed, a reversal of a judgment due to remarks made by counsel during closing arguments is rare and requires that counsel make an appeal to the jurors' passions and emotions. *Mills* v. *State*, 322 Ark. 647, 910 S.W.2d 682 (1995). In the event an improper statement has been made, an admonition to the jury usually cures any prejudice unless the argument is so patently inflammatory that justice could not be served by continuing the trial. *King* v. *State*, 317 Ark. 293, 877 S.W.2d 583 (1994).

■ Puckett contends that in this case the "golden rule" argument made by the prosecutor was reversible error. *See, e.g., King* v. *State*, 317 Ark. 293, 877 S.W.2d 583 (1994); *Adams* v. *State*, 229 Ark. 777, 318 S.W.2d 599 (1958). In *King*, we discussed what comprises a golden-rule argument:

> The "golden rule" argument suggests to jurors that they place themselves in the position of a party or victim. The golden rule argument is impermissible because it tends to subvert the objectivity of the jury. It is seen as an attempt to dissuade the jurors from their duty to weigh the evidence and instead to view the case from the standpoint of a litigant or party. The rule is applied to criminal cases as well as civil cases.

*King*, 317 Ark. at 293, 877 S.W.2d at 586 (citations omitted).

■ We affirm on this point for two reasons. The closing argument of counsel at issue here falls short of suggesting to the jurors that they place themselves in the posture of the victim. But, more importantly, the trial court immediately instructed the jury to disregard the argument, and defense counsel requested no additional relief. The trial court did more than it was requested to do. There was no error.

### III. Motions for Mistrial

For his last point, Puckett urges that the trial court erred in failing to declare a mistrial in two instances. The first motion to declare a mistrial occurred before testimony was taken and after the first prospective juror was called. Puckett walked into the courtroom with his attorney and this exchange ensued:

DEFENSE COUNSEL: Your Honor, at this time the defense would make a motion for a mistrial. The reason would be because we were late coming into the courtroom and I walked in with David [Puckett], and the name Sarah Edminston was being called at that time. So for that reason, because–

THE COURT: Do you want to have another trial because you were late? The court was set for nine, why were you not here?

DEFENSE COUNSEL: Your Honor, he didn't have his pants.

. . . .

THE COURT: Did you make any arrangements to confirm the status of the defendant to see if he was ready for court?

DEFENSE COUNSEL: No, your honor, I did not.

THE COURT: That motion will be denied.

The court asked if appellant wanted anything else that had not been done, and defense counsel responded, "no."

▉ A mistrial is a drastic remedy which should only be used when there has been an error so prejudicial that justice cannot be served by continuing the trial or when the fundamental fairness of the trial itself has been manifestly affected. *Stewart* v. *State*, 320 Ark. 75, 894 S.W.2d 930 (1995); *Richmond* v. *State*, 302 Ark. 498, 791 S.W.2d 691 (1990). The trial court has wide discretion in granting or denying a motion for a mistrial, and absent an abuse of that discretion, the trial court's decision to deny a motion for a mistrial will not be disturbed. *Stewart* v. *State, supra; King* v. *State*, 298 Ark. 476, 769 S.W.2d 407 (1989). Furthermore, a mistrial will be granted only where any possible prejudice cannot be removed by an admonition to the jury. *Trull* v. *State*, 322 Ark. 157, 908 S.W.2d 83 (1995); *Furlough* v. *State*, 314 Ark. 146, 861 S.W.2d 297 (1993).

▉ Puckett contends in his brief on appeal that the mistrial was appropriate because he walked in late in "obvious custody" of the Sheriff's Department which signaled to the jury that he was in jail. Thus, according to the argument, he was prejudiced. We do not agree. First, Puckett did not make this specific argument to the

trial court, and the record does not reflect that the jury was made aware that Puckett was in custody. But, in addition, any prejudice resulting from Puckett's tardiness could have been cured by an admonition to the jury. *See Trull v. State, supra.* None was requested. There was no reversible error.

Puckett's second motion to declare a mistrial occurred during *voir dire. Voir dire* examination was conducted in panels of three. During the *voir dire* of Twila Burnett, Harry Scarlet, and Rex Legrand, the trial court excused Burnett for cause. The prosecuting attorney then asked Scarlet if he could be fair, and he responded:

> I'm the manager of a grocery store here in town, and the lady that's with you has done shopping in my store for several years, and I would have tendency to agree with her more than I would anyone else.

Counsel for Puckett approached the bench, and moved that the trial court declare a mistrial. The trial court ruled:

> Well, the court has to hear a reason to excuse a juror. . . . He's just being honest with the court, as a human being, saying that people are familiar with that. I'm going to overrule. I don't think the other jurors will take anything other than he's acquainted with this person, and might have some difficulty and he is going to the ultimate in trying to bend over backwards to say, "I might be unfair. I don't know, I might lean," so I'm going to deny your motion.

Defense counsel then responded: "I'm sure the court will instruct the jury they will make their decision solely on the evidence and they are the sole judges of credibility of the witnesses." Scarlet was dismissed for cause, and Legrand was accepted as a juror. No further relief from the trial court was requested. At the conclusion of the evidence, the trial court did instruct the jury that they were the sole judges of the credibility of the witnesses.

In *Stewart v. State, supra,* the defendant moved for a mistrial during *voir dire* after a potential juror stated that the defendant was probably guilty since there were five counts against him. The potential juror stated that he did not think he could follow the presumption of innocence. This court affirmed the trial court's denial of the motion. As part of our reasoning, we relied on the fact that no curative instruction had been requested by defense counsel

and no proof was offered to show that the statement was heard by other jurors or *venire* persons. After noting that the jurors are presumed to be unbiased, we held:

> We find that no reversible.error was committed by the trial court in denying appellant's motion for a mistrial where no prejudice has been shown and [the venireman making the remark] did not serve on the jury that was ultimately selected.

*Stewart*, 320 Ark. at 80, 894 S.W.2d at 933.

Similar to *Stewart*, the trial court concluded that any prospective jurors who might have heard Scarlet's statement most likely took it to mean that Scarlet knew the witness and could not be objective. In addition, Arkansas Model Criminal Instruction 2d 104 on the credibility of the witnesses was given at the proper time, and that instruction, in light of the negligible influence of Scarlet's statement, cured any possible prejudice. The trial court did not err in denying the motion to declare a mistrial.

Affirmed.