Albert DIRICKSON *v.* STATE of Arkansas

CR 97-224                                953 S.W.2d 55

Supreme Court of Arkansas
Opinion delivered September 25, 1997

*Lajeana Jones*, Public Defender, by: *Deborah R. Sallings*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

W.H. "DUB" ARNOLD, Chief Justice. The appellant, Albert Allen Dirickson, was convicted of three counts of attempted capital murder and single counts of attempted rape and residential burglary. He was sentenced to a total of 140 years' imprisonment for the offenses. Naked, intoxicated, and armed with a hunting knife, appellant unlawfully entered the home of Lyndell and Nedra Martin in DeQueen, Arkansas, on September 5, 1995, and stabbed Mrs. Martin and her eleven-year-old and sixteen-year-old sons. On appeal, the appellant contends that the trial court erred in denying his motions for funds to hire a neuropsychologist and for a continuance to obtain an additional mental evaluation to more fully investigate his diagnosed congenital abnormality, "agenesis of

the corpus callosum." We hold that the trial court did not abuse its discretion in denying appellant's requests and affirm.

■ We recently reviewed the guidelines to which we adhere in determining whether the denial of a continuance is error in *Miller v. State*, 328 Ark. 121, 124, 942 S.W.2d 825, 827 (1997):

> The grant or denial of a continuance is within the sound discretion of the trial court, and the decision will not be reversed absent an abuse of discretion amounting to a denial of justice. *Turner v. State*, 326 Ark. 115, 931 S.W.2d 86 (1996). . . A.R.Cr.P. Rule 27.3 provides:
>
>> The court shall grant a continuance only upon a showing of good cause and only for so long as necessary, taking into account not only the request or consent of the prosecuting attorney or defense counsel, but also the public interest in prompt disposition of the case.
>
> The following factors are to be considered by the trial court in deciding a continuance motion: (1) The diligence of the movant; (2) the probable effect of the testimony at trial; (3) the likelihood of procuring the attendance of the witness in the event of a postponement; and (4) the filing of an affidavit, stating not only what facts the witness would prove, but also that the appellant believes them to be true. *Turner*, 326 Ark. 115, 931 S.W.2d 86.

The pertinent facts to this appeal are as follows. The felony information was filed in appellant's case on September 5, 1995. On September 11, 1995, the defense filed a motion giving notice that they intended to raise the defense of mental disease or defect. On this same date, the trial court entered an order committing appellant to the state hospital for a mental evaluation.

While in jail awaiting trial, appellant began complaining of headaches and was seen by Dr. Richard Ridlon, who ordered a CAT scan that was conducted on October 9, 1995. Dr. John Pestaner interpreted the CAT scan and opined that appellant had a dysgenetic corpus callosum. Dr. Pestaner suggested that appellant be evaluated by a neurologist.

On November 22, 1995, the defense filed a motion for continuance on the ground that the mental evaluation had not been completed. On March 1, 1996, the original trial date, the trial court granted the defense motion and set a new trial date of July 1, 1996. Subsequently, on March 27, 1996, appellant was admitted to the state hospital for evaluation.

In a letter dated May 1, 1996, Drs. Michael J. Simon and O. Wendall Hall III of the state hospital announced their conclusions that, at the time of the commission of the alleged offenses, appellant did not lack the capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law, had the capacity to have the culpable mental state to commit the offenses charged, and was capable of cooperating with an attorney in the preparation of his defense. According to Dr. Simon, a clinical psychologist, despite appellant's attempts to exaggerate his problems, appellant's alcohol problem was the most significant factor in his alleged criminal behavior. While in the state hospital, appellant underwent a magnetic resonance imaging scan of the brain, an electroencephalogram, and a full neurological evaluation. The letter further indicated that a neurologist, Dr. Reginald J. Rutherford, had conducted a forensic evaluation of appellant and had determined that he had an "agenesis of the corpus callosum," an "incidental congenital abnormality" that, in his opinion, would not influence appellant's mental state or behavior and had "no connection" to his alleged criminal behavior.

At a June 20, 1996, pretrial hearing, appellant's trial counsel admitted to having received a copy of the state hospital's May 1, 1996, letter "a few days" afterwards. However, it was not until June 6, 1996, that counsel asked the trial court to order the state hospital to send supporting documents from the mental evaluation for her review. On June 12, 1996, the trial court granted the request.

On June 13, 1996, the defense filed a motion for continuance for the purpose of obtaining and examining appellant's records from the state hospital. On June 25, 1996, the defense filed another motion for continuance for the purpose of having Dr.

Michael Gelbort, a neuropsychologist from Chicago, Illinois, evaluate appellant. On June 26, 1996, the defense filed a motion requesting funds to help pay Dr. Gelbort's $3,750.00 fee. On June 28, 1996, the defense filed yet another motion for continuance, this time for the purpose of allowing an Arkansas neuropsychologist, Dr. Ronald Huisman, to examine and evaluate appellant. In support of the motions, appellant submitted the affidavits of both physicians. Dr. Gelbort averred that very serious behavioral disorders and discontrol syndromes can occur with agenesis of the corpus callosum. Dr. Huisman averred that appellant had not been adequately evaluated and needed a neuropsychological evaluation. According to Dr. Huisman, there are multiple syndromes associated with appellant's condition, and approximately one-half of patients with this condition have seizure disorders or mental retardation. The trial court denied appellant's requests, stating that appellant's abnormality appeared to have been negated by his intoxicated condition, that Dr. Gelbort had a financial interest in being paid for his opinion, and that it was in the best interests of society for the case to proceed.

Appellant contends that the trial court's rulings in his case violated the principles espoused in *Ake v. Oklahoma*, 470 U.S. 68 (1985), in which the Supreme Court held that when a defendant makes a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that the State assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. In Arkansas, the statutory procedures to be followed when the defense of mental disease or defect is raised are found in Ark. Code Ann. § 5-2-305 (Repl. 1993). We have repeatedly held that a defendant's right to examination under *Ake* is protected by an examination by the state hospital as provided by this statute. *Sanders v. State*, 308 Ark. 178, 824 S.W.2d 353 (1992), *cert. denied* 115 S.Ct. 1126 (1995); *Day v. State*, 306 Ark. 520, 816 S.W.2d 852 (1991); *Coulter v. State*, 304 Ark. 527, 804 S.W.2d 348, *cert. denied* 502 U.S. 829 (1991); *Wainwright v. State*, 302 Ark. 371, 790 S.W.2d 420, *cert. denied* 499 U.S. 913 (1990); *Branscomb v. State*, 299 Ark. 482, 774 S.W.2d 426 (1989). An evaluation performed

under this section does not normally require a second opinion, *Richmond v. State*, 320 Ark. 506, 899 S.W.2d 64 (1995), and further evaluation is discretionary with the trial court. *Rucker v. State*, 320 Ark. 643, 899 S.W.2d 447 (1995). Stated simply, the State is not required to pay for a defendant to shop from doctor to doctor until he finds one who will declare him incompetent to proceed with his trial. *Brown v. State*, 316 Ark. 724, 875 S.W.2d 828 (1994). In the present case, appellant was examined at the state hospital, and, thus, the requirements under *Ake* were satisfied.

Appellant maintains that the State's own experts, particularly a Dr. Knight, a psychologist at UAMS, evaluated appellant and recommended that he see a neuropsychologist. However, appellant has not abstracted any records that indicate that he was seen by a Dr. Knight, much less any recommendation by a State's expert that appellant needed to be evaluated by a neuropsychologist. As we have said many times, the record on appeal is confined to that which is abstracted. *Newman v. State*, 327 Ark. 339, 939 S.W.2d 811 (1997). Moreover, there is nothing in the record to indicate that a Dr. Knight made such a recommendation. It is the appellant's burden to bring up a record sufficient to show that the trial court erred. *Winters v. Elders*, 324 Ark. 246, 920 S.W.2d 833 (1996). For these reasons, we will not consider this portion of appellant's argument.

Appellant further relies on two cases from the Eighth and Eleventh Circuits; however, a review of the facts in those cases reveals that they are clearly distinguishable. In *Starr v. Lockhart*, 23 F.3d 1280 (8th Cir. 1994), Starr had been previously placed in institutions for the mentally retarded and had been diagnosed as mildly to moderately retarded. In that case, the Eighth Circuit held that an additional opinion may be justified when it has been shown that further examination could aid the defense. In *Cowley v. Stricklin*, 929 F.2d 640 (11th Cir. 1991), Cowley had been previously committed to mental institutions some 16 times and had been diagnosed as a schizophrenic. While the appellants in *Starr* and *Cowley* had significant histories of mental illness, appellant's mental history in the case at bar began only after he was jailed for the present offenses. As Dr. Rutherford observed, appellant's

abnormality had gone undiscovered for some twenty-eight years. Thus, appellant's argument is unpersuasive.

Even if we were to hold that appellant's evaluation at the state hospital was insufficient, it was appellant's burden to prove the existence of a mental disease or defect. *See Miller,* 324 Ark. at 124. He could have attempted to do so as early as October of 1995, when he complained of headaches and his condition was discovered. As in *Miller,* the defense chose to employ the strategy of waiting to see what the State's doctors would find before seeking to obtain their own experts for an evaluation. Moreover, appellant's trial counsel admitted to having received the state hospital's report "a few days" after it was written on May 1, 1996. However, she waited over one month to request supporting documents on June 6, 1996. In sum, appellant was not diligent in attempting to secure the necessary information on which to build a defense of mental disease or defect. *Miller,* 328 Ark. at 129.

■  Appellant has also failed to show that the probable effect of Drs. Gelbort's and Huisman's testimony would be to establish that appellant's condition prevented him from appreciating the criminality of his conduct. *See Miller, supra.* According to appellant's trial counsel, Dr. Gelbort was concerned about appellant's blood alcohol level because it affects the abnormality. The state hospital report indicated that appellant's alcohol problem was the most significant factor in his criminal behavior. Under these circumstances, the probable effect of Dr. Gelbort's testimony would have been of little benefit to appellant's defense.

Based on the foregoing, we hold that the trial court did not abuse its discretion in denying appellant's motions for expert funds and a continuance.

Affirmed.

GLAZE, IMBER, and THORNTON, JJ. dissent.

ANNABELLE CLINTON IMBER, J., dissenting. I must disagree with the majority's conclusion that appellant is not entitled to an additional expert evaluation under the principles enunciated by the United States Supreme Court in *Ake v. Oklahoma,* 470 U.S. 68 (1985).

Based upon rulings by this court in *Richmond v. State*, 320 Ark. 506 899 S.W.2d 64 (1995), and by the Eighth Circuit Court of Appeals in *Starr v. Lockhart*, 23 F.3d 1280 (8th Cir. 1994), our review of this case should begin with the following inquiries: 1) did appellant show that sanity at the time of the offense was likely to be a significant factor, 2) did appellant make a showing that an independent expert would have aided in his defense and 3) would a denial of such assistance result in an unfair trial. I would find that all the above inquiries should be answered in the affirmative.

With regard to the first inquiry, the court's order for a mental evaluation was sufficient to show that appellant's sanity at the time of the offense was likely to be a significant factor. With regard to the second inquiry, the facts support appellant's contention that an expert would have aided in his defense. It is undisputed that a CAT scan performed at DeQueen Regional Hospital in October of 1985 revealed that the appellant suffered from a brain abnormality known as *agenesis* of the *corpus callosum*.

Following this initial evaluation, appellant spent thirty-five days at the state hospital and was examined by Dr. Reginald J. Rutherford, a neurologist, who confirmed the brain abnormality, but opined that the abnormality would not influence appellant's mental state or behavior. Appellant then arranged for Michael Gelbort, Ph. D. neuropsychologist, to review and evaluate his medical records. Dr. Gelbort opined that appellant's condition was a "rare and significant condition," with which "serious behavior disorders and discontrol syndromes can occur," and recommended further evaluation by a neuropsychologist or behavioral neurologist.

Furthermore, Ronald Huisman, Ph.D. neuropsychologist, testified that appellant's medical records included a recommendation by Dr. Armani, a neurologist at the University of Arkansas Medical Center, that appellant be further examined by a neuropsychologist. Because a neuropsychological examination was never performed, Dr. Huisman concluded that appellant had "not been adequately evaluated" and that further evaluation was necessary to assess the "degree to which this man is impaired."

The above facts indicate that appellant made a more than adequate showing that an "independent expert would have aided in his defense." *Starr, supra*. It is clear from the information presented to the court that further evaluation by a neuropsychologist would help determine the true nature of the effects of appellant's brain abnormality and thereby aid in his defense. Without the assistance of further evaluation, appellant was left without the ability to determine whether he had a viable defense based on mental defect. "The right to psychiatric assistance . . . means the right to use the services of a psychiatrist in whatever capacity the defense counsel deems appropriate — including to decide, with the psychiatrist's assistance, not to present to the court particular claims of mental impairment." *Smith v. McCormick*, 914 F.2d 1153, 1157 (9th Cir. 1990).

The trial court denied appellant's request for funds to hire an expert witness based upon the opinion of the state's neurologist that the brain abnormality would not influence appellant's mental state or behavior, especially in light of the appellant's intoxication at the time of the crime. Although there was *some* evidence that appellant's brain abnormality would have no effect on his mental state or behavior, appellant introduced evidence to show that such a determination was premature, because appellant had never been evaluated by a neuropsychologist as recommended by not only Drs. Gelbort and Huisman, but also by Dr. Armani at the University of Arkansas Medical Center. Given such an incomplete evaluation, the trial court should have appointed a competent neuropsychologist to "conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." *Ake, supra*. "The validity of the defense should then have been for the jury to decide." *Cowley v. Stricklin*, 929 F.2d 640, 643 (9th Cir. 1991). Considering the above points, it is clear that appellant made an adequate showing that a denial of expert assistance resulted in an unfair trial, especially in light of the fact that a defense of mental disease or defect was appellant's only viable defense.

The majority attempts to distinguish the Eighth Circuit's ruling in *Starr, supra*, by suggesting that the appellant in *Starr* had a significant history of mental illness, whereas appellant's mental his-

tory in this case began only after he was jailed for the present offenses. The majority's distinction ignores appellant's history of headaches and blackouts, and a below average I.Q. score (80).

The majority further states that "the state is not required to pay for a defendant to shop from doctor to doctor until he finds one who will declare him incompetent to proceed with his trial." I must respectfully disagree with that characterization of appellant's actions. After the trial court denied appellant's original request for funds to hire an out-of-state neuropsychologist, appellant tried to find a qualified expert in Arkansas. Appellant's counsel attempted to procure an expert from the V.A. hospital in Little Rock, but that expert did not do "criminal work." Ultimately, appellant's counsel hired a neuropsychologist in Arkansas to review appellant's medical records. Considering these attempts by appellant's counsel to locate an expert, it is clear that appellant was not "expert shopping" for a second opinion. Rather, appellant was merely attempting to obtain the neuropsychological evaluation that had never been done, notwithstanding recommendations by several experts that such an evaluation was necessary.

For the above reasons, I must respectfully dissent.

GLAZE AND THORNTON, JJ., join in this dissent.