Cite as 2019 Ark. 351

# SUPREME COURT OF ARKANSAS

**No.** CR–19–347

|  |  |  |
|---|---|---|
|  |  | **Opinion Delivered:** November 21, 2019 |
| ROY A. HENDRIX | | |
| | APPELLANT | APPEAL FROM THE GRANT COUNTY CIRCUIT COURT [NO. 27CR-17-189] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE CHRIS E WILLIAMS, |
| | APPELLEE | JUDGE |
| | | <u>AFFIRMED</u>. |

**SHAWN A. WOMACK, Associate Justice**

Roy Hendrix bound his mother, beat her head with a hammer, and drove away in her car. Though left for dead, Judy Hendrix survived. Hendrix was subsequently convicted of attempted capital murder, kidnapping, and theft of property. He appeals only the denial of his motion for continuance to obtain an independent mental evaluation. We affirm.

I.

Because a detailed account of the underlying case is unnecessary to resolve the sole issue on appeal, our factual discussion will be brief. On October 29, 2017, Hendrix was asked to leave the halfway house where he lived after showing up to work while intoxicated. He was dropped off at his mother's house in Leola that afternoon. Judy, who lived alone, was not home and was not expecting her son. Before Judy returned that evening, Hendrix consumed a bottle of vodka, two joints of marijuana, and some methamphetamine. He insists he cannot recall the rest of the evening. His recorded confession to police suggests

otherwise. Hendrix told police that after he explained why he had been kicked out of the halfway house, Judy refused to allow him to live with her. He did not provide a detailed account of what happened next, but simply confessed that "[he] did it."

Later that night, a Leola constable conducted a welfare check on Judy at her granddaughter's behest. Judy's car was missing but the lights were on. The constable discovered Judy lying in her living room floor. She was bound at the ankle and bleeding from her head. She had sustained multiple blunt force head injuries, including several skull and facial fractures and bleeding in and around her brain. Despite the severity of her injuries, Judy survived. But she was unable to recall what happened.

Hendrix was soon arrested. He gave police the keys to Judy's car and told them where it was located. A hammer, vodka bottles, Judy's cell phone, and Hendrix's cell phone were inside the car. Judy's hair and blood were on the hammer. Hendrix was charged with kidnapping, aggravated robbery, attempted capital murder, and theft of property.

Prior to trial, Hendrix sought and received fitness to proceed and criminal responsibility examinations. Both examinations revealed that he suffered from alcohol, cannabis, and methamphetamine use disorders. But he was ultimately deemed fit to stand trial and capable of being held criminally responsible for his conduct. On the day before trial, Hendrix sought a continuance to seek an independent criminal-responsibility examination. The circuit court found that he had not acted diligently and denied the request. A jury subsequently convicted Hendrix of attempted capital murder, kidnapping, and theft of property. He was respectively sentenced to two consecutive life terms and a ten thousand dollar fine. It is from this conviction that he directly appeals to this court.

2

II.

For his sole point on appeal, Hendrix challenges the denial of his motion for continuance filed the day before trial. He sought additional time to obtain an independent mental evaluation after the state hospital determined he was capable of being held criminally responsible. Hendrix admitted he had not sought an independent examination because he was waiting to see what the state hospital's report would hold. The circuit court found that Hendrix had not been diligent and refused to grant the continuance.

The decision to deny a continuance is within the sound discretion of the circuit court and will not be disturbed absent a clear abuse of that discretion. *See Brown v. State*, 374 Ark. 341, 347, 288 S.W.3d 226, 231 (2008). Hendrix's burden on appeal is twofold: he must establish that the court abused its discretion and show that the decision resulted in prejudice amounting to a denial of justice. *Id.* Prejudice is not presumed in this context. *See King v. State*, 317 Ark. 293, 301, 877 S.W.2d 583, 588 (1994). Hendrix fails on both points.

A continuance should be granted only upon a showing of good cause. Ark. R. Crim. P. 27.3 (2017). In considering a motion for continuance, the court should "tak[e] into account not only the request or consent of the prosecuting attorney or defense counsel, but also the public interest in prompt disposition of the case." *Id.* The court should also consider: (1) the diligence of the movant; (2) the probable effect of the testimony at trial; (3) the likelihood of procuring the attendance of the witness in the event of a postponement; and (4) the filing of an affidavit, stating not only what facts the witness would prove but also that the movant believes them to be true. *See Creed v. State*, 372 Ark. 221, 223, 273 S.W.3d

3

494, 496–97 (2008). A lack of diligence alone is a sufficient basis to deny a motion for continuance. *See Anthony v. State*, 339 Ark. 20, 22, 2 S.W.3d 780, 781 (1999).

Hendrix sought a continuance to obtain an independent examination to support an affirmative defense of lack of criminal responsibility. *See* Ark. Code Ann. § 5-2-328 (Supp. 2017). A defendant lacks criminal responsibility for his actions if, due to a mental disease or defect, he lacked capacity at the time of the alleged offense to either appreciate the criminality of his conduct or conform his conduct to the requirements of the law. *See* Ark. Code Ann. § 5-2-301 (Supp. 2017). A "mental disease or defect" in this context does not include voluntary intoxication caused by drugs or alcohol. *See* Ark. Code Ann. § 5-2-301(7)(B). This is true even when the defendant has a dependency upon or addiction to the intoxicating substance. *Id*. The burden of proving the existence of a mental disease or defect rests on the defendant. *See Dirickson v. State*, 329 Ark. 572, 578, 953 S.W.2d, 55, 58 (1997).

It is clear from the record that Hendrix began exploring options related to his mental condition from the outset of the criminal proceedings below. In December 2017, a month after he was charged, Hendrix sought and was granted a fitness-to-proceed examination. The court consequently continued the March 2018 trial until July of that year. In May, Hendrix was examined by Dr. Benjamin Silber at the state hospital and deemed competent to proceed. Hendrix subsequently requested and was granted a criminal-responsibility examination. The court once again continued trial to accommodate the examination. Trial was set to begin on September 27, 2018.

At a status hearing on September 12, Hendrix informed the court that the criminal-responsibility examination was scheduled for September 20. Yet he raised no objection to

4

the upcoming trial date at that time. Indeed, it was only after the examination returned unfavorable results that Hendrix determined he should seek an independent evaluation. In a report submitted on September 24, but allegedly received the following day, Dr. Silber concluded that Hendrix was capable of appreciating the criminality of his conduct and conforming his conduct to the requirements of the law. On September 26, Hendrix sought a continuance to obtain an independent evaluation to rebut Dr. Silber's findings and support an affirmative defense of lack of criminal responsibility.

During a hearing on the motion, Hendrix informed the court that he had not yet sought any other expert testimony or evidence related to his mental condition. Nor had he subpoenaed any witness, including Dr. Silber, to testify on the issue at trial the next day. Given that Hendrix requested a criminal responsibility examination from the state hospital in May, he had ample time to pursue an independent evaluation before trial. Instead, he planned to wait and see what Dr. Silber's report would conclude before seeking to obtain his own experts for an evaluation. We have consistently held that a defendant who employs such a "wait and see" strategy is not acting diligently in attempting to secure the necessary information on which to build a defense of mental disease or defect. *See Dirickson*, 329 Ark. at 578, 953 S.W.2d at 58; *Miller v. State*, 328 Ark. 121, 128–29, 942 S.W.2d 825, 829 (1997).

We likewise find no merit in Hendrix's assertion that the denial of the continuance effectively denied him the opportunity to seek an examination by an expert of his own choosing. It is true that a defendant's qualified expert of his choosing is permitted to have reasonable access to the defendant for the purpose of an examination. Ark. Code Ann. § 5-

5

2–306 (Repl. 2013). But the court "shall provide the expert with reasonable opportunity to examine the defendant upon a *timely* request." Ark. Code Ann. § 5-2-328(g)(2) (emphasis added). We cannot say that any request would have been timely in light of Hendrix's lack of diligence. To the extent Hendrix seeks reversal based on the court's alleged failure to suspend the proceedings pending his criminal responsibility examination, this argument was not raised below. It is accordingly not preserved for review on appeal.

As a final point, Hendrix failed to demonstrate any resulting prejudice amounting to a denial of justice. He did not point to any specific information that the continuance would have garnered that would have impacted or changed the outcome of his trial. We will not presume prejudice where the appellant offers no proof of it. *See Barnes v. State*, 346 Ark. 91, 103, 55 S.W.3d 271, 279 (2001). The only evidence regarding Hendrix's criminal responsibility related to his inability to remember the crime based on his voluntary intoxication. Indeed, Dr. Silber concluded that Hendrix suffered from alcohol, cannabis, and methamphetamine use disorders. But this is not a basis to support a defense of mental disease or defect. Hendrix failed to show how additional testing may have resulted in a more favorable conclusion. Moreover, Hendrix did not attempt to raise an affirmative defense of lack of criminal responsibility at trial. *See Dyer v. State*, 343 Ark. 422, 432, 36 S.W.3d 724, 730 (2001). His defense at trial was instead one of general denial and insufficient evidence. Hendrix accordingly failed to show any prejudice from the denial of the continuance. *Id*.

Our mandatory review of the record under Arkansas Supreme Court Rule 4–3(i) (2017) has not revealed any reversible error.

Affirmed.

HART, J., dissents.

**JOSEPHINE LINKER HART, Justice, dissenting.** I dissent. It is not Hendrix's fault that the State waited until three days before trial to disclose the results of its criminal-responsibility examination, especially when Hendrix had filed his request for the examination almost five months earlier. Hendrix did not know he would need an independent examination until the State completed its own examination and disclosed the results. The lateness of the State's disclosure of the results was good cause for a continuance.

"When a defendant desires to be examined by one (1) or more qualified physicians or other experts of his or her own choice, that qualified physician or other expert is permitted to have reasonable access to the defendant for the purpose of examination." Ark. Code Ann. § 5-2-306 (Repl. 2013). Further, "[i]f a defendant wishes to be examined by an expert of his or her own choosing, the circuit court shall provide the expert with reasonable opportunity to examine the defendant upon a timely request." Ark. Code Ann. § 5-2-328(g)(2). Immediately after the State disclosed the results of its criminal-responsibility determination, Hendrix made the request for an independent examination. Affirming the circuit court's refusal to allow time for an independent evaluation because of Hendrix's alleged "lack of diligence" misses the point entirely.

By the majority's rationale, Hendrix, who was represented by a public defender below, would have had to request funds for an independent examination from the circuit court before the court and the parties had even received the results of the State's examination. In other words, Hendrix's State-paid public defender would have had to tell the State-paid judge and the State-paid prosecutor that, regardless of what the State-paid

7

examiner determines about Hendrix's criminal responsibility at the time of the crime, the results of that examination will not be reliable in the eyes of the defense—therefore, the court should go ahead and give Hendrix money to hire an independent medical professional to examine Hendrix an additional time. We should not allow the prosecution or the trial court to put the public defenders in such a conflicted position. It deters proper advocacy and is a recipe for more of these lingering problematic legal issues that follow a conviction for decades. *See, e.g.*, *Ward v. State*, 2018 Ark. 59, 539 S.W.3d 546; *Davis v. State*, 2018 Ark. 69, 539 S.W.3d 565. The issue (whether the defendant should have been afforded an independent examination of his competency to stand trial) in *Ward* and *Davis*, both of which are postconviction cases, was nearly identical to the issue in this case and was still being litigated over twenty-five years after the convictions were entered. *Id*. Instead of affirming this case and asking for more of the same, we should just remand for an independent examination.

I dissent.

*Gregory K. Crain*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.