Walter Glenn CARTER *v.* STATE of Arkansas

CR 95-933                                929 S.W.2d 690

Supreme Court of Arkansas
Opinion delivered September 16, 1996

*Wayne Emmons* and *Chandler Law Firm*, by: *Edward Witt Chandler*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant Walter Carter was charged with the capital murder of Charles Mettler, the burglary of Mettler's residence, and the battery of Carter's wife, Denise, who was present at Mettler's house at the time of the killing. Carter raised the insanity defense, but the jury convicted him of the capital murder and burglary charges, and Carter was sentenced respectively to life imprisonment without parole and twenty years.[1]

In this appeal, Carter first claims the trial court erred in denying his motion for continuance on the date of trial. In his motion, Carter requested more time to obtain a mental evaluation to show he was incompetent to stand trial. To understand Carter's argument and the trial court's ruling, we review the pretrial events that took place from the time Carter first requested a mental evaluation. That request was granted by the trial court on April 18, 1994, and an evaluation was conducted. Upon Carter's request, a second evaluation was ordered on May 3, 1994. On June 8, 1994, the State Hospital submitted its report, stating that Carter was not mentally ill at the time of the crime, and that he was competent to stand trial. Nevertheless, Carter requested further continuances on July 5, 1994 and August 22, 1994, which were also granted. The July and August 1994 court orders reflect that new counsel, Mr. Wayne Emmons, had entered an appearance on Carter's behalf.[2] Those orders extended pretrial dates from August 22, 1994 to October 4, 1994. Meanwhile, State Hospital doctors, John Anderson and O. Wendell Hall, filed another report with the court, on September 29, 1994, finding Carter was malingering and suffered only from a personality disorder. Again, the doctors concluded Carter was competent to stand trial and did not lack the capacity to appreciate the

---

[1] The battery charge was not tried.

[2] The record reflects that Mr. Emmons was contacted by Carter's family sometime in May 1994, and while Emmons's name appears in the July 5 and August 22 orders, he asserted in an October 7, 1994 motion that he was not hired until September 9, 1994, when counsel received $15,000.00.

criminality of his conduct at the time he beat Mettler to death.

The record next reflects yet another of Carter's continuance motions filed on October 7, 1994. In that motion, Mr. Emmons and co-counsel, Edward Chandler, asserted that they had had their first "lengthy" meeting with Carter on October 3, 1994, at the Marion County Jail, and appeared at the scheduled October 4, 1994 pretrial hearing to request a further extension in setting a trial date. Carter's October 7 motion set out a host of reasons, both personal and business, but the most relevant appeared to be that counsel had just been hired, Carter had been unavailable to them, and counsel had just received the State Hospital's report.[3] At the October 4 hearing, the trial court proceeded to set a trial date for November 7, 1994, but, after doing so, it promptly granted another of Carter's continuance motions on November 1, 1994. That November 1 order extended trial to the court's next term in 1995. In the meantime, another State Hospital forensic evaluation report was filed with the court on November 7, 1994, reflecting that Carter was malingering and diagnosed with a personality disorder.

. Given the foregoing continuances, Carter then petitioned for expenses to hire Jonathan J. Lipman, a neuropharmacologist, and Marsha H. Little, a clinical neuropsychologist. On January 12, 1995, the trial court granted an award of $2,500 to hire Dr. Lipman, but denied any monies for Dr. Little.[4] On January 20, 1995, Carter again moved for a continuance, complaining he had not had the time and money to adequately prepare for trial. Once again, Carter's motion was granted, and this time, the trial court set a new trial date for May 1, 1995.

Carter filed yet another motion for continuance on April 26, 1995, wherein he claimed further evaluation was needed. The record reflects this motion was not presented to or acted on by the trial court, but Carter filed the same request again on May 1, 1995, the day of trial. Attached to Carter's May 1 motion was the hand-

---

[3] Other reasons given for continuance were that counsels had other case commitments taking their time and they had personal trips scheduled for Alaska, Texas, and Marion County, Arkansas.

[4] In checking the transcript, we do not find where Carter was declared indigent for expense purposes, but nonetheless, the trial court awarded funds anyway. We note that Carter does not challenge the amount awarded in this appeal. Carter was declared indigent for appeal purposes on August 18, 1995.

written affidavit dated April 30, 1995, of Marsha H. Little, wherein she stated Carter's competency to stand trial is questionable because he is unable to process information in an accurate way. Little's affidavit further related that Carter's ability to confer with his attorneys was impaired and he was unable to effectively assist in his own defense.

In denying Carter's motion, the trial court stated Carter had waited until the last minute to ask for another continuance and the affidavit he submitted was vague and failed to provide sufficient information for the court to formulate a judgment as to Carter's competency. The trial court further indicated Carter could have obtained the information he was now seeking months before, but failed to do so. Nonetheless, the trial court invited Carter to put on testimony in opposition to the State's proof, which showed Carter was competent to stand trial. Carter declined to do so.

■ We have repeatedly held that a continuance is addressed to the sound discretion of the trial court, and a decision will not be reversed absent an abuse of discretion amounting to a denial of justice. *Bowen v. State*, 322 Ark. 483, 911 S.W.2d 555 (1995); *Dansby v. State*, 319 Ark. 506, 893 S.W.2d 331 (1995). We would also point out, as did the trial court below, that an accused is presumed competent to stand trial, and the burden of proving incompetence is on the accused. *Bowen*, 322 Ark. at 505. The trial court here gave Carter numerous continuances, months, and opportunities to obtain proof bearing on his competency to stand trial, but he waited until the last scheduled day of trial to submit a brief handwritten statement by his clinical neuropsychologist, stating in conclusory fashion that Carter's competency to stand trial was "questionable," and that Carter was unable to effectively assist in his own defense. The trial court clearly gave Carter every opportunity to prepare his defense for trial and did not abuse its discretion in denying the last of Carter's many continuance motions. Having said that, we point out that the trial court also enunciated that because insanity remained an issue in the case, it would enter an appropriate order during trial if it became convinced trial should not proceed. These remarks of the trial court bring us to Carter's second argument that the trial court erred in refusing a mistrial motion after Carter attempted suicide during trial.

The following events took place, leading to Carter's request for mistrial. After all evidence had been presented and before the court

had reconvened on the fourth day of trial, the trial court was informed that Carter, while in custody, had overdosed on medication. The trial court, giving no reason, informed the jury the trial would be continued until May 10, 1995. It also admonished the jury not to read media accounts of the trial or talk to people concerning the trial. By May 10, Carter had been released by the hospital, and he returned to trial. However, before trial reconvened, Carter's counsel moved to be allowed to reopen Carter's case to offer his suicide attempt as further proof of his insanity. The trial court stated it would grant counsels' request, but it would then be required to allow the state to reopen its case to show how Carter had attempted suicide on other occasions when accused of crimes. Counsel then withdrew the motion to reopen their case.

Defense counsel then moved for mistrial, stating they had had difficulty in conversing with Carter during trial. Counsels' examples were that when they asked Carter, "How do you feel? Are we doing better?" he responded, in a blank kind of way, "Mr. Chandler, how are we doing?" Also when asked what are you doing or what are you thinking about, he replied, "I'm praying."

In denying Carter's mistrial motion, the trial court stated as follows:

> The Court has had the opportunity to view you in consultation with your client through the substantive portions of the trial. We are down to closing arguments at this point. [Carter] seemed very capable of helping, aiding and assisting you in discussing strategy and I have noted that and observed that throughout the trial.

> Further, I have had the benefit of the testimony of four so-called experts. I have listened to the expert testimony and am persuaded that Mr. Carter is competent to stand trial, and that's a decision for the court.

A mistrial is an extreme remedy that should only be granted when justice cannot be served by continuing the trial *Morgan* v. *State*, 308 Ark. 627, 826 S.W.2d 271 (1992); *Taylor* v. *State*, 303 Ark. 586, 799 S.W.2d 519 (1990). Further, a defendant cannot be allowed to abort a trial and frustrate the process of justice by his own acts. *Morgan,* 308 Ark. 627, 826 S.W.2d 271.

In the present case, the trial court based its denial both on

expert testimony, and its own observations of Carter during trial and Carter's interaction with his attorneys. While Carter's counsel contended his client did not respond to questions posed to Carter as counsel thought Carter should have, the record actually shows Carter made appropriate responses. The trial court later denied a motion to reevaluate Carter which was made before sentencing based on its previous findings.

Carter cites *Drope v. Missouri*, 420 U.S. 162 (1974), and argues due process is violated when a trial court fails to make further inquiry into the defendant's competency and fails to give adequate weight to defendant's suicide attempt and pretrial showing of irrational behavior. However, *Drope* is distinguishable in significant ways. There, the trial court had not determined Drope's competency to stand trial, but instead, uncontradicted evidence showed that Drope had manifested irrational behavior before trial. Here, Carter had been thoroughly evaluated and found to be a malingerer, without psychosis, and competent to proceed to trial. Also, in *Drope*, the defendant was absent from his trial after his suicide attempt; here Carter was present. Again, unlike *Drope*, the trial court here had previously determined Carter's competency prior to trial and was able to observe Carter's ability to consult with counsel both before and after his attempted suicide.

■ We also note Carter's reliance on *Pate v. Robinson*, 383 U.S. 375 (1966), where the Court held the uncontradicted evidence of Robinson's disturbed behavior over a long period raised sufficient doubt of his competence to stand trial, and it remanded the case for a new trial. However, *Pate*, too, is distinguishable from the situation presented here. In *Pate*, four witnesses expressed the opinion that Robinson was insane. The only contrary evidence presented by the state was a stipulation by a doctor who offered the opinion that Robinson knew the nature of the charges against him and was able to cooperate with counsel, but made no finding of sanity. Again, here Carter had been evaluated on several occasions and found competent. Carter also was found to be a malingerer. While Carter had been afforded adequate time to obtain further evidence bearing on his competency in advance of trial, he failed to do so. In sum, the trial court had ample evidence and reasons to deny Carter's motion for mistrial.

■ Finally, Carter argues that the trial court should have granted his motion for directed verdict with respect to burglary, and

premeditation and deliberation for capital murder. We do not, however, reach this issue because Carter is procedurally barred since he failed to renew his motion at the close of this case. *Heard* v. *State*, 322 Ark. 553, 910 S.W.2d 633 (1995).

For the reasons above, we find no error and, after noting the record of the trial has been reviewed pursuant to Ark. Sup. Ct. R. 4-3(h), we affirm.