Robert C. TURNER *v.* STATE of Arkansas

CR 96-327                                           931 S.W.2d 86

Supreme Court of Arkansas
Opinion delivered September 30, 1996

*Jim Pedigo, P.A.*, by: *Jim Pedigo*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant Robert C. Turner files this appeal from his convictions of burglary and attempted rape and respective consecutive sentences of twenty-year terms. His sole point for reversal is that the trial court should have granted him a continuance on the day of trial because a mental examination report had not yet been filed with the court as required by Ark. Code Ann. § 5-2-305(f) (Supp. 1995).

Briefly, we mention the facts leading to Turner's arrest. On the morning of November 19, 1994, Mary L. Byrd heard a window break in her dining room, and upon investigation, she went downstairs and found an adult male standing in the dining room. Byrd screamed and tried to escape out the back door, when the intruder struck her. After repeatedly beating Byrd, the intruder then demanded she "get them (clothes) off, bitch." Byrd was able to get up and ran outside where the intruder caught her and tried to strangle her with an extension cord. By this time, one of Byrd's daughters appeared, frightening the intruder away. Byrd and her daughter later identified Turner as the intruder from a photo lineup. Turner was subsequently charged and convicted of burglary and attempted rape.

On March 15, 1995, Turner requested a psychiatric examination, asserting he previously had undergone brain surgery which he alleged resulted in a mental defect. The circuit court granted Turner's motion, ordering Southwest Arkansas Counseling and Mental Health, Inc. (Southwest Mental Health) to determine if Turner suffered from a mental defect at the time of the alleged offenses and

whether he was competent to stand trial.

Turner was granted three continuances in order to obtain a report from Southwest Mental Health, and after the third, the trial court set the trial for Wednesday, August 9, 1995. By August 9, an evaluation report still had not been filed. Trial was again postponed, but on Friday, August 11, 1995, defense counsel and the prosecutor conferenced with the trial court and determined they could try the case on Tuesday, August 15, 1995. While no evaluation had been filed, counsel had been in phone conferences with Dr. Michael McAllister, a clinical psychologist with Southwest Mental Health, and on August 11 the doctor sent defense counsel the following facsimile:

> Talked with Dr. Seidel — we agree Mr. Turner is competent at this time and is able to form intent even though A-E functions below average.

At the August 15 trial, counsel for both sides announced ready for trial, and they proceeded to select a jury. After jury selection, defense counsel orally asked for a continuance because an evaluation report had still not been filed with the court. He relied on § 5-2-305(f) and argued that, under this provision, it was mandatory for the person designated to perform the evaluation to file the report of the examination with the clerk of the court. Turner concluded that he should not be forced to trial until such report was filed.

The trial court pointed out that § 5-2-305 does not provide when examination reports must be filed, and it stated that it had been lenient in granting prior continuances. The trial court further noted that he had been in close contact with the defense and prosecution for several days to make sure the case was ready for trial; it also had been made aware of Dr. McAllister's facsimile reflecting Turner's competency to stand trial. The trial court concluded that it believed Turner had been given enough time in continuances, but it allowed both counsel to have a preliminary trial hearing to ask Dr. McAllister questions. During that questioning, Dr. McAllister stated that he had what information that he needed to know,[1] and

---

[1] In explaining why a report had not been filed, the doctor said that he had only one missing piece of information which was some legal information concerning a medical malpractice suit involving Turner. Nonetheless, the doctor stated he believed he knew what he needed in order to give an opinion.

opined that while Turner did have some mental retardation, he could conform his conduct to the law at the time of the crimes with which Turner was charged, and he was able to assist counsel in preparation for trial.

After hearing counsels' arguments and Dr. McAllister's pretrial testimony, the trial court ruled that it was Turner's burden to prepare his defense, and having failed to obtain an evaluation report, it would grant Turner no further continuance for that purpose. In addition, the trial court found Dr. McAllister's testimony and his earlier facsimile given to Turner four days before trial complied with the court's prior order directing Turner's mental examination and report. After the trial court's rulings, the case was tried to a jury which found Turner guilty.

Turner's point on appeal asserts the trial court erred in denying a continuance, but his argument focuses mostly on his construction of Ark. Code Ann. § 5-2-305 (Supp. 1995), and claim that, if an evaluation report was not filed in strict compliance with that statute, he could not be tried. In particular, Turner cites Ark. Code Ann. § 5-2-305(d) (Supp. 1995), which provides as follows:

(d) The report of the examination shall include the following:

(1) A description of the nature of the examination;

(2) A diagnosis of the mental condition of the defendant;

(3) An opinion as to his capacity to understand the proceedings against him and to assist effectively in his own defense;

(4) An opinion as to the extent, if any, to which the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired at the time of the conduct alleged; and

(5) When directed by the court, an opinion as to the capacity of the defendant to have the culpable mental state that is required to establish an element of the offense charged.

Turner's argument is that the facsimile submitted to defense counsel by Dr. McAllister did not strictly or substantially comply

with § 5-2-305(d), nor did the doctor's facsimile and his pretrial testimony substantially comply with § 5-2-305(f), which provides that the person designated to perform the evaluation shall file the report of the examination with the clerk of the court. In sum, Turner claims that had the examination been filed in accordance with these provisions, as their plain terms provide, he would not have been placed in the position of deciding, on the day of trial, the extent to which he would make use of the fact that Turner had undergone brain surgery.

■ We first discuss the relevant principles in addressing the trial court's decision to deny Turner's continuance motion. We have repeatedly held that a continuance is addressed to the sound discretion of the trial court, and a decision will not be reversed absent an abuse of discretion amounting to a denial of justice. *Carter v. State*, 325 Ark. 477, 929 S.W.2d 690 (1996). We would also point out, as did the trial court below, that an accused is presumed competent to stand trial, and the burden of proving incompetence is on the accused. *Id.*; *Bowen v. State*, 322 Ark. 483, 911 S.W.2d 555 (1995).

■ Continuance motions are in part governed by Arkansas Rule of Criminal Procedure 27.3, which provides as follows:

> The court shall grant a continuance only upon a showing of good cause and only for so long as is necessary, taking into account not only the request or consent of the prosecuting attorney or defense counsel, but also the public interest in prompt disposition of the case.

This court has also denoted the following several factors to be considered by a trial court in deciding a continuance motion: (1) the diligence of the movant; (2) the probable effect of the testimony at trial; (3) the likelihood of procuring the attendance of the witness in the event of a postponement, and (4) the filing of an affidavit, stating not only what facts the witness would prove, but also that the appellant believes them to be true. *Wilson v. State*, 320 Ark. 142, 895 S.W.2d 524 (1995); *see also* Ark. Code Ann. § 16-63-402(a) (1987).

Here, the trial court granted four continuances, and in an attempt to confirm if Turner's case was ready for trial, it conferenced with the defense counsel and prosecutor four days prior to the trial date and concluded it was. In fact, Turner appeared on the day of trial, both sides announced ready, and Turner did not make

his continuance request until after the jury was selected.

■ At least four days before trial time, Turner knew Dr. McAllister had determined Turner to be competent and would testify accordingly. He also knew the State and the trial court were prepared to try his case on August 15, but filed no motion or affidavit stating reasons why another continuance should be granted. At the conclusion of the preliminary hearing, Turner, besides arguing § 5-2-305 was not complied with, stated his medical problem of brain surgery was a factor in the case and the psychologist's report would specify the problems. As the prosecutor pointed out, Turner could have best obtained that information by interviewing the doctor who performed the surgery, but he failed to do so. In sum, the record simply fails to reveal Turner acted diligently in making another continuance request on the day of trial, and the trial court was well within its discretion to deny it.

■ Finally, we would also mention that Turner failed to show that he had been prejudiced by the trial court's denial of his continuance motion. *Baumgarner v. State*, 316 Ark. 373, 872 S.W.2d 380 (1994). While we could well agree that Dr. McAllister's report failed to comply with the provisions contained in § 5-2-305, Turner never argued that his defense would ultimately depend upon incompetency or insanity. Turner offered no indication that he would request evaluation by another psychologist in an attempt to contest Dr. McAllister's findings of competency. Rather, Turner testified, asserting the alibi defense, that he was at his sister's house when the crimes were committed. Because Turner failed to show how Dr. McAllister's report would have altered the evidence presented at trial, he has shown no prejudice resulted from the trial court's denial of his continuance motion.

For the above reasons, we affirm.

BROWN, J., dissents.

ROBERT L. BROWN, Justice, dissenting. On March 15, 1995, appellant Robert C. Turner notified the State of his insanity defense and moved the court for a psychiatric examination and for all records, reports, evaluations, and examinations relating to it. That same date, the trial court ordered the evaluation and also ordered the examining agency to "make available to counsel the records of said examination, including all existing medical and pertinent records, including 'raw data.'" The court further ordered the

agency to transmit "a report of the findings of the staff" concerning Turner's mental competency. None of this was done. Rather, the examining psychologist, Dr. Michael McAllister, was examined after the jury was sworn about his work to date. Dr. McAllister admitted on the stand that his report was not yet complete. Understandably, Turner's counsel argues in his brief on appeal:

> As a result, Appellant's counsel was thus faced, on the very day of trial, with making a lightning-quick decision as to a matter of strategy, namely, the extent to which he would make use of the fact of the partial removal of Appellant's brain in Appellant's defense.

As a practical matter, defense counsel was forced to abandon the insanity defense.

This court has dealt with analogous situations on two prior occasions. *See Hayes* v. *State*, 274 Ark. 440, 625 S.W.2d 498 (1981); *Westbrook* v. *State*, 265 Ark. 736, 580 S.W.2d 702 (1979). In *Hayes*, the defendant had sought staff reports in conjunction with the court-ordered psychiatric examination. The mental health agency's report addressed the defendant's borderline retardation and diagnosed him as being without psychosis, although suffering from alcohol addiction and a severe antisocial personality. The report stated that it was based on historical data and physical and neurological examinations. The defendant did not receive copies of the underlying psychiatric data. We concluded, in reversing the conviction:

> Here, it could be that an inspection and copying of these records and reports would have better enabled the appellant to prepare his defense, or interpose the defense of insanity, or present at trial crucial evidence bearing on mitigation, such as possible mental retardation, during the sentencing phase of the trial. We hold it was prejudicial error to deny him access to these agencies' reports.

*Hayes*, 274 Ark. at 444, 625 S.W.2d at 500.

Similarly, in *Westbrook* v. *State, supra*, the defendant's basic defense was insanity at the time the offense was committed. We noted that the burden of proof on the defendant was preponderance of the evidence, and that the defendant had moved for the full State Hospital records relating to his two commitments. The trial court

granted the motion but the data was never furnished to him. This court stated: "Due to the nature of the defense we feel it was necessary that appellant have these records, if they exist, in order to fully prepare his defense." *Westbrook*, 265 Ark. at 745, 580 S.W.2d at 707. We concluded that "the materiality of the records has clearly been shown and the need for them was apparent." *Westbrook*, 265 Ark. at 746, 580 S.W.2d at 707. In *Westbrook*, we granted a new trial for this and other reasons.

The trial court, with justification, was frustrated by the fact that the trial had been continued four times to allow the agency's report to be filed. On the day of the trial, defense counsel advised the court that he had subpoenaed Dr. McAllister for trial and raised the question of what else he could have done to precipitate a report. The same question comes to my mind: What can defense counsel do when an examining psychiatrist or psychologist is recalcitrant or too busy and fails to file the required report? Here, the examining psychologist clearly knew about the trial date and the fact that the trial court had ordered that the report and backup data be filed. He simply had been unable to complete the report. Defense counsel, as a result, was hamstrung in mounting his defense and was forced, in effect, to go to trial without the benefit of the psychologist's report, much less the underlying data which were at issue in the *Hayes* and *Westbrook* cases.

I further conclude that the report and data must be transmitted and filed before trial. Otherwise, it would be useless to both the prosecution and the defense in waging battle over the defendant's fitness to proceed at trial and competency at time of the offense.

Here, Dr. McAllister candidly admitted that he was too busy to complete the report, that there was underlying data on which the report would be based, that one piece of outstanding information still remained to be garnered, and that he would probably have the report filed in two to three weeks. A one-sentence hand-written note from Dr. McAllister four days before trial setting forth his conclusion of competency followed by his testimony on the day of trial do not cure the obvious defect in procedure. They certainly do not rise to the stature of the report required by Ark. Code Ann. § 5-2-305 (Supp. 1995). The defense was caught up short by the failure of the examining agency to comply with the court order and state law.

One final point. I cannot say that defense counsel was dilatory in obtaining the report. In these instances, the examining psychiatrist or psychologist holds the cards. Counsel asked for continuances to buy time, including a request on the day of the trial after the jury was seated, to give him time to review the report. That was denied him. I would remand for a new trial.