John Christopher PEELER *v.* STATE of Arkansas

CR 96-605                                    932 S.W.2d 312

Supreme Court of Arkansas
Opinion delivered October 28, 1996

*William C. McArthur*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Vada Berger*, Asst. Att'y Gen.,

for appellee.

DAVID NEWBERN, Justice. John Christopher Peeler was convicted of capital murder for having killed Chris Cummings. Mr. Peeler was referred to at the trial as "Chris Peeler." Chris Cummings disappeared in 1992. Amy Blankenship was Mr. Peeler's fifteen-year-old girlfriend at that time. She became Amy Peeler when she married Mr. Peeler on her sixteenth birthday in 1993. At Chris Peeler's trial, which took place in 1996, Amy Peeler testified about her role in kidnapping Mr. Cummings prior to the murder. Mr. Peeler contends that, as Amy Peeler was his alleged accomplice, corroborating evidence sufficient to demonstrate that the crime was committed and that he was connected with it was required and that it was not forthcoming. His second point is that the Trial Court erred in refusing his request for a mistrial when a witness testified he thought Mr. Peeler was "guilty." We hold the evidence corroborating Ms. Peeler's testimony was sufficient and that any prejudice resulting from the testimony which gave rise to the mistrial motion was not such as to require reversal. We affirm the judgment in which Mr. Peeler was sentenced to life imprisonment without parole.

On the evening of December 19, 1992, Chris Cummings, a tenth-grade student, told his parents that he was going to watch a movie with "Amy" and that he would be back later. Chris did not return. The next day his parents instigated a search and notified police authorities. His picture was circulated on flyers and on milk cartons to no avail. Investigators recovered neither his body nor any physical evidence that could reveal what happened to him.

In December 1994, the police received a call from a friend of Amy Peeler who said Amy had revealed that her husband, Chris Peeler, killed Chris Cummings because Cummings had raped her. The police arrested Amy Peeler, and she gave them a statement, repeated at Chris Peeler's trial, implicating her husband in the murder of Chris Cummings.

Mr. Peeler was arrested and charged with kidnapping and capital murder. The State waived the death penalty, and the case proceeded to trial. Chris Cummings's father testified that on the evening of Saturday, December 19, 1992, Chris Cummings was given permission to go out to watch a movie with a girl named Amy who had called their home that evening. He stated that Chris

Cummings had not previously run away and had always returned home within fifteen minutes of his curfew.

Amy Peeler testified that Chris Cummings had been a classmate and friend. She testified they passed notes and talked during their school lunch periods but did not date because she was going out with Chris Peeler. She was asked on direct examination to tell of an incident involving Chris Cummings that occurred in her father's home in November 1994. (The question apparently was meant to refer to November 1992.) She responded that Chris Cummings came to her and her father's home and raped her when her father was away. For a time she told no one of the incident except Chris Peeler and his mother, Cindy Sheridan.

According to Amy's testimony, Chris Peeler, who was then her boyfriend and who had returned to Arkansas at Christmas time from Marine Corps boot camp in California, listened on another line while she called Chris Cummings and asked why he had raped her. Chris Cummings made a remark during the phone conversation confirming that the event had occurred. Chris Peeler then had Amy set up a meeting at Sawyer's Grocery Store. Amy drove to the rear of the store at about 10 p.m., after the store had closed, with Chris Peeler hiding in the rear floorboard of the car. When Chris Cummings entered the vehicle, Chris Peeler jumped him, tied him up, and put him in the trunk. Amy testified that Chris Peeler then took her home. The next day he told her that he had killed Chris Cummings and that it "took forever for him to die." Amy stated that Chris Peeler told her he took the body to a place near Scott and dumped it in the water. Chris Peeler's grandparents owned property near Scott where they fished and with which he was familiar. Arkansas River backwater and slough areas are nearby.

Amy Peeler testified that, after marrying Chris Peeler in June 1993, she lived with him for a year and a half but left him because she could not go on "living a lie," knowing what he had done.

Chris Peeler's mother, Cindy Sheridan, a witness for the State, testified her son asked her, "Mom, do you know the boy that raped Amy?" and that when she responded affirmatively he said he "took care of it." She said she asked what he had done and he stated that he "had taken the boy out to the swamp out to Scott and did him in."

Randy Alford, Chris Peeler's uncle, testified that Chris Peeler told him that he killed somebody named Chris because that person had raped Amy.

Gloria Denton testified that on the nineteenth or twentieth of December, 1992, she was living on Old River Road in Scott. She identified Mr. Peeler as a person who came to her house during that time and asked to use her phone because his car was stuck in her field.

Selena Johnson testified that Mr. Peeler, while at a party, stated that he had committed the perfect murder.

Mr. Peeler made timely motions for a directed verdict on the ground the State had failed to present evidence that a homicide had occurred and had failed to corroborate the accomplice testimony of Amy Peeler. The motions were denied.

### 1. Sufficiency of the evidence

A motion for directed verdict is a challenge to the sufficiency of the evidence. *Stewart v. State*, 320 Ark. 75, 894 S.W.2d 930 (1995); *Evans v. State*, 317 Ark. 449, 878 S.W.2d 409 (1994). The test is whether the verdict is supported by substantial evidence, direct or circumstantial. *Evans v. State, supra*; *Thomas v. State*, 312 Ark. 158, 847 S.W.2d 695 (1993). Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another. *Evans v. State, supra*; *Coleman v. State*, 314 Ark. 143, 860 S.W.2d 747 (1993). We review the evidence in the light most favorable to the appellee. *Id.*

Mr. Peeler contends a verdict should have been directed in his favor because the State failed to produce enough evidence to corroborate Amy Peeler's testimony.

> A conviction cannot be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof.

Ark Code Ann. § 16-89-111(e)(1) (1987). The corroboration must be sufficient standing alone to establish the commission of the offense and to connect the defendant with it. *Hogue v. State*, 323

Ark. 515, 915 S.W.2d 276 (1996); *Daniels* v. *State,* 308 Ark. 53, 821 S.W.2d 778 (1992). The test for corroborating evidence is whether, if the testimony of the accomplice were totally eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission. *Meeks* v. *State,* 317 Ark. 411, 878 S.W.2d 403 (1994); *Daniels* v. *State, supra.* Circumstantial evidence qualifies as corroborating evidence but it, too, must be substantial. *Id.* Corroborating evidence need not, however, be so substantial in and of itself to sustain a conviction. *Id. See also Rhodes* v. *State,* 280 Ark. 156, 655 S.W.2d 421 (1983).

■ The primary evidence presented to corroborate the testimony of Amy Peeler was the testimony of Mr. Peeler's mother and uncle. Both testified that Mr. Peeler admitted the murder. That evidence independently establishes the crime and tends to connect the accused with its commission.

### 2. Motion for mistrial

Mr. Alford, Chris Peeler's uncle, when questioned as to why he was testifying against Chris, stated, "I believe he's guilty." Counsel moved for a mistrial on the ground that the question and answer were improper. He contended the remark expressed a conclusion reserved to the jury and was highly prejudicial and could not be cured by an admonition to the jury. The prosecutor stated it had not been her intention to elicit the response Mr. Alford made to her question. The mistrial motion was overruled, but the Trial Court offered to admonish the jury to disregard the testimony. Counsel declined the offer. Mr. Peeler contends it was error not to grant the motion.

■ "A mistrial is a drastic remedy which should only be used when there has been an error so prejudicial that justice cannot be served by continuing the trial or when the fundamental fairness of the trial itself has been manifestly affected." *Puckett* v. *State,* 324 Ark. 81, 918 S.W.2d 707 (1996). *See also Stewart* v. *State,* 320 Ark. 75, 894 S.W.2d 930 (1995); *Richmond* v. *State,* 302 Ark. 498, 791 S.W.2d 691 (1990). A trial court has wide discretion in granting or denying a motion for a mistrial, and absent an abuse, the decision will not be disturbed. *Stewart* v. *State, supra; King v. State,* 298 Ark. 476, 769 S.W.2d 407 (1989). A mistrial will be granted only where any possible prejudice cannot be removed by an admonition to the jury. *Trull* v. *State,* 322 Ark. 157, 908 S.W.2d 83 (1995); *Furlough* v.

*State*, 314 Ark. 146, 861 S.W.2d 297 (1993).

■ Prior to asking the question, the prosecutor noted that Mr. Alford was a "reluctant witness," and Mr. Alford confirmed it. Although the open-ended, follow-up question asked of Mr. Alford as to why he had agreed to testify may have sought a response of questionable relevance, we cannot gainsay the prosecutor's remark, after the mistrial motion was made, to the effect that she had not sought Mr. Alford's opinion with respect to the guilt or innocence of the accused. Finally, we regard the problem as one which could have been cured by an admonition to the jury. *See Weaver* v. *State*, 324 Ark. 290, 920 S.W.2d 491 (1996); *Boyd* v. *State*, 318 Ark. 799, 889 S.W.2d 20 (1994). Mr. Peeler's counsel refused the Trial Court's offer to admonish the jury on the ground that it would only call more attention to the statement. In these circumstances, we hold no error occurred.

### *3. Arkansas Supreme Court Rule 4-3(h)*

The record has been reviewed for any error resulting from rulings prejudicial to Mr. Peeler, and none have been found.

Affirmed.