Richard Francis BARR III *v.* STATE of Arkansas

CR 98-328 984 S.W.2d 792

Supreme Court of Arkansas
Opinion delivered January 28, 1999

*Kenneth G. Fuchs*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

R AY THORNTON, Justice. Appellant Richard Barr brings this appeal of his convictions for attempted capital murder, kidnapping, rape, aggravated robbery, theft of property, criminal impersonation, and fleeing, alleging several points of error by the trial court. Finding no error, we affirm appellant's convictions and his sentence of life imprisonment.

Appellant, traveling from West Virginia with his half-brother, Alan Chauncey, met twenty-one-year-old Sally Sanders and her mother in Conway during the evening hours of February 10, 1997. Representing themselves as FBI agents, appellant and Chauncey persuaded the two women to join them for coffee, then returned with them to the apartment Sally shared with her twenty-year-old sister, Alice. Chauncey asked to come inside to use the restroom; he emerged with a gun in hand and took the three women hostage. Over the course of the evening the women were bound and stripped, and the two sisters were subjected to multiple rapes.

Leaving Barr guarding the other two women with a knife, Chauncey took Sally to an ATM and withdrew cash from the women's bank accounts. Returning to the apartment, the sisters

were made to shower, dress, and pack travel bags; they were told they would be taken to Fort Smith and released. Janie Sanders was left bound on a bed. Alice Sanders was ordered into the brothers' white Ford Explorer with Chauncey while Sally was to ride with appellant in Alice's Pontiac Grand Am. Chauncey stood guard over the sisters in the parking lot while appellant returned to the apartment and slit Janie Sanders's throat.

After the gunmen left with their hostages, Janie Sanders managed to free herself and go for help. The Conway Police Department was notified to be on the lookout for a white Explorer with West Virginia tags, and officers caught sight of it headed toward the interstate. The officers in pursuit stopped the Explorer in Conway on an entrance ramp to Interstate 40, but it suddenly took off at a high rate of speed. The officers began a high speed chase after the vehicle. Sally Sanders testified that appellant joined the chase a "couple of seconds" after they accessed the interstate in Conway.

Conway police officer Benjamin Lackey testified that while chasing the Explorer westbound on I-40, the officers were notified that a Grand Am was also involved in the crime. Shortly thereafter, Lackey spotted the Grand Am driven by appellant coming up behind them, then attempting to force the officers off the road. Officer Lackey did not recall where he was on the interstate when he first saw the Grand Am, but he did not believe he had reached Menifee, which is located on the Faulkner County - Conway County line. From that point, Officer Lackey began chasing the Grand Am at speeds in excess of one hundred and twenty miles per hour. Appellant was finally stopped in Pottsville, in Pope county.

Barr was charged with criminal impersonation, four counts of rape (accomplice liability), one count of aggravated robbery, two counts of aggravated robbery (accomplice liability), three counts of kidnapping, two counts of theft of property, two counts of theft of property (accomplice liability), criminal attempt to commit capital murder, theft by receiving, and fleeing. The brothers' cases were severed for trial. The trial court granted appellant's directed-verdict motion as to theft by receiving with regard to the

Explorer, believed to be stolen. He was convicted on the remaining counts and sentenced to three life sentences plus 120 years.

Appellant brings this appeal, alleging five points of error: that the trial court erred in not admitting the psychological report of accomplice Alan Chauncey and not allowing the psychologist to testify regarding his findings; in denying appellant's directed-verdict motions with regard to the charges of criminal impersonation and fleeing; in allowing introduction of other crimes committed by the accomplice; and in denying appellant's motion for a mistrial during the State's closing arguments. We address each of these points in turn.

## I. Psychiatric Evidence of Chauncey

For his first assignment of error, appellant claims that the trial court should have allowed him to admit into evidence testimony of the psychiatrist who conducted Chauncey's court-ordered mental evaluation and the State Hospital's report of that evaluation. Appellant claims that this evidence was essential to bolster his own credibility and to support his affirmative defenses of duress and choice of evils. Specifically, appellant argued that his brother had threatened to kill him and the three women, and that he was compelled to do what his brother instructed him to do. Alan Chauncey asserted his right under Ark. R. Evid. 503 to claim the psychotherapist-patient privilege, as well as his Fifth Amendment right against self-incrimination. The trial court agreed that Chauncey's medical records were privileged with respect to Barr's trial, and ruled that the psychiatrist could not testify and that the report could not be introduced. With regard to the threshold question whether Chauncey's medical records were relevant to Barr's claimed affirmative defenses, there was no showing that appellant was aware of Chauncey's disorder, or that it influenced his actions. After the court disallowed the evidence, appellant proffered both the doctor's testimony and the report for the record.

Rule 503 provides:

> (b) General Rule of Privilege. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing his

medical records or confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition, including alcohol or drug addiction, among himself, physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.

Ark. R. Evid. 503.

■ Appellant agrees in his brief that the psychological evaluation was completed to determine Chauncey's fitness to proceed. The rule clearly provides that communications made to a psychotherapist are privileged except with respect to the purpose for which the examination was ordered, unless ordered otherwise by the court. Ark. R. Evid. 503(d)(2). Here, the communications were made for the purpose of determining Alan Chauncey's competency, not for the purpose of supporting appellant's affirmative defense. Alan Chauncey's assertion of his privilege to refuse to disclose, and to prevent others from disclosing, his confidential communications made for the purpose of diagnosis or treatment is fundamental, and appellant cites no authority and makes no persuasive argument that the court's ruling was in error. In the words of Justice George Rose Smith, we are being asked in effect to research the law and to hold in favor of the appellant if the research of our labor so demands. We must decline that invitation. Assignments of error presented by counsel in their brief, unsupported by convincing argument or authority, will not be considered on appeal, unless it is apparent without further research that they are well taken. *Dixon v. State*, 260 Ark. 857, 862, 545 S.W.2d 606, 609 (1977).

■ ■ Appellant asserts that no privilege exists where the communications have already been provided to third persons, i.e. the trial judge, prosecutor, and appellant's attorney. However, no privilege exists for a court-ordered evaluation "with respect to the particular purpose for which the examination is ordered." Ark. R. Evid. 503(d)(2). As such, this court-ordered report was necessary material for the trial court and the prosecutors, as well as Chauncey's attorney in the proceeding against Chauncey. Notwithstanding that appellant's attorney had obtained a copy of

the report, the claim of privilege is not defeated by a disclosure which was inadvertently made.

Appellant asserts that, pursuant to *Baker v. State*, 276 Ark. 193, 637 S.W.2d 522 (1982), the privilege is inapplicable here because the rule applies to "communications," not simply any information. Appellant does not specify what portions of the testimony or the report should have been admitted, or explain why they amount to information, not "communications." Nonetheless, appellant's reliance upon *Baker* is misplaced because there the issue concerned the introduction of certain portions of Baker's medical records *at her own trial*.

Moreover, the basic question of the admissibility of evidence is relevancy. Relevant evidence is admissible; evidence which is not relevant is not admissible. Ark. R. Evid. 402. "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ark. R. Evid. 401.

The evidence which appellant sought to introduce concerned Chauncey's diagnosis of multiple personality disorder, and appellant argues that this condition supports his affirmative defense of duress or the choice of evils. Appellant asserts that if he had not followed his brother's orders, Chauncey would have killed the women and appellant. However, appellant makes no argument and offers no citations in support of the relevancy of Chauncey's diagnosis to his own actions in committing the crimes. This evidence is not relevant to the charges at issue. Absent any showing that appellant was aware of Chauncey's disorder or that he acted in reliance upon it, and because appellant provides no citation of authority to support his contention that a medical record of another person should be admissible despite the confidentiality of such medical reports, the trial court did not commit error in excluding the report and testimony, and is affirmed on this point.

## II. Directed-Verdict Motions

For his second and third points of error, appellant asserts that the trial court erred in denying his motions for directed

verdicts on the charges of criminal impersonation and fleeing. Directed-verdict motions are challenges to the sufficiency of the evidence. *Peeler v. State*, 326 Ark. 423, 427, 932 S.W.2d 312, 314 (1996). The test is whether the evidence is supported by substantial evidence, direct or circumstantial. Substantial evidence compels a conclusion with reasonable certainty beyond mere suspicion or conjecture. *Id.* We only review the evidence supporting the verdict and do so in the light most favorable to the State. *Williams v. State*, 329 Ark. 8, 16, 946 S.W.2d 678, 682 (1997).

■ Arkansas Code Annotated section 5-37-208 (Repl. 1997) provides that, "A person commits criminal impersonation in the second degree if he does an act in his pretended or assumed capacity or character with the purpose to injure or defraud another person and he: . . . Pretends to be an officer . . ." Ark. Code Ann. § 5-37-208(b). The evidence presented on that charge established that Chauncey represented himself and appellant to be FBI agents and that appellant not only did not correct this misrepresentation, but responded when addressed by his alias. Further, two special officer police-type badges were recovered from the brothers' vehicle. Reviewing this evidence in the light most favorable to the State, we cannot say that it was error for the trial court to have denied appellant's directed-verdict motion and to have given this charge to the jury, and thus, the trial court is affirmed.

With regard to appellant's contention that the trial court erred in denying his directed-verdict motion on the charge of fleeing, appellant does not deny that he fled, but challenges only the trial court's jurisdiction over the offense, arguing that while in Faulkner county he was actually chasing the police and that it was not until the chase moved outside the county that appellant had the intent to flee. Finding that appellant had "put himself into the chase," the trial court denied appellant's motion upon finding that Faulkner county had concurrent jurisdiction over the offense with the other counties through which the chase passed.

The trial court's finding was correct. Arkansas Code Annotated section 16-88-108(c) (1987) provides that "when an offense is committed partly in one county and partly in another, or the

acts, or effects thereof, requisite to the consummation of the offense occur in two (2) counties, the jurisdiction is in either county." Ark. Code Ann. § 16-88-108(c). Here, the testimony was that appellant joined the chase in Faulkner county, before the pursuit reached the Conway county line. This court addressed a similar issue in *Shaw v. State,* 299 Ark. 474, 773 S.W. 2d 827 (1989), where an appellant argued that the Boone county court lacked jurisdiction over his fleeing charge when a portion of the crime giving rise to an element of the felony charge occurred in Carroll county. That argument was "summarily dispensed with by Ark. Code Ann. § 16-88-108(c)," cited above. *Shaw,* 299 Ark. at 479, 773 S.W. 2d at 829. *See also Thrash v. State,* 291 Ark. 575, 726 S.W. 2d 283 (1987).

The jury found the testimony of Officer Lackey to be credible, and it is the province of the jury, not this court, to weigh the evidence and pass on the credibility of witnesses. Rather than reweighing the evidence presented at trial, we determine whether there is substantial evidence to support the lower court's findings. *Freeman v. State,* 331 Ark. 130, 133, 959 S.W. 2d 400, 402 (1998). *See also Walker v. State,* 330 Ark. 652, 955 S.W. 2d 905 (1997). Evidence, whether direct or circumstantial, is sufficient to support a conviction if it is forceful enough to compel reasonable minds to reach a conclusion one way or the other. *Walker v. State,* 330 Ark. 652, 656, 955 S.W. 2d 905, 907 (1997). There is substantial evidence to support the verdict on this point and the trial court will be affirmed.

### III. *Evidence of Other Crimes*

Appellant's fourth point on appeal asserts that the trial court erred in allowing evidence of other crimes allegedly committed by appellant and Chauncey in a multi-state spree to be introduced against him. Appellant argues that the introduction of these other crimes was contrary to Ark. R. Evid. 404(b), which reads: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Ark. R. Evid. 404(b). Appellant asserts that the State introduced these other crimes to show that appellant acted in conformity therewith and that to allow such introduction was error on the part of the trial court.

 Appellant raised the affirmative defense of duress at trial, claiming that he feared that Chauncey would kill him and the women if he did not follow Chauncey's instructions. Arkansas Code Annotated section 5-2-208 provides:

> (a) It is an affirmative defense to a prosecution that the actor engaged in the conduct charged to constitute an offense because he reasonably believed he was compelled to do so by the threat or use of unlawful force against his person or the person of another that a person of ordinary firmness in the actor's situation would not have resisted.
>
> (b) The affirmative defense provided by this section is unavailable if the actor recklessly placed himself in a situation in which it was reasonably foreseeable that he would be subjected to the force or threatened force described in subsection (a) of this section.

Ark. Code Ann. § 5-2-208 (Repl. 1997).

The defense of duress requires that at the time of the conduct constituting the offense the actor suffers an impairment of his ability to control his conduct such that he cannot properly be held accountable for it. *Marx v. State*, 291 Ark. 325, 328, 724 S.W.2d 456, 458 (1987).

Appellant testified on direct examination that his brother told him that if anything went wrong, he would kill him, and that appellant was afraid that if he did not follow Chauncey's instructions, he would be killed. He further testified that Chauncey put a gun to the back of his head and told appellant to cut Janie Sanders's throat. The State was permitted to ask appellant, over counsel's objection, about crimes that were committed by the two brothers while they traveled from West Virginia to Oklahoma. Appellant testified that while he was with Chauncey, appellant robbed a motel in Tennessee at gunpoint. He also stated that he robbed a man at a roadside rest area in Tennessee at gunpoint. Appellant testified that he felt compelled by Chauncey to commit these crimes even though they were traveling in separate cars and

appellant could have left his brother at any time. Appellant further testified that he and Chauncey robbed a convenience store in Oklahoma. According to appellant, he turned the surveillance camera away from the scene of the crime while Chauncey held two clerks at gunpoint.

This evidence was properly introduced to dispute appellant's defense of duress to show that appellant willingly participated in a series of crimes in several states, even though appellant was traveling in a separate vehicle and could have removed himself at any time from any influence that might have been exerted by his brother. Evidence of other crimes is admissible to rebut an affirmative defense, where appropriate. For example, this court held that evidence of another crime was admissible under Rule 404(b) to rebut an alibi defense in *Williams v. State*, 276 Ark. 399, 401, 635 S.W. 2d 265, 266 (1982). More recently, the court of appeals has held that the evidence of prior bad acts may properly be admitted under Rule 404(b) to rebut a defense of entrapment in *Kellogg v. State*, 37 Ark. App. 162, 173, 827 S.W. 2d 166, 173 (1992). Where such evidence is not offered merely to show a defendant's bad character, and is relevant to prove some material point rather than merely to prove the defendant is a criminal, evidence of prior bad acts which fits within the exceptions of Rule 404(b) is admissible.

A trial court's decision to admit evidence under Rule 404(b) is reviewed under an abuse of discretion standard. *Abernathy v. State*, 325 Ark. 61, 64, 925 S.W. 2d 380, 381 (1996). The trial court ruled that the State could cross-examine appellant about other crimes in order to "test that defense insofar as it relates to his knowledge, plan, preparation, identity, or absence of mistake or accident." The trial court found it appropriate under this rule for the State to inquire to determine whether the fear of his brother of which appellant testified was an honest or reasonable fear. Here, where such evidence was offered to rebut appellant's affirmative defense of duress, the trial court properly allowed its introduction.

*IV. Motion for Mistrial During State's Closing Argument*

Appellant asserts for his final point on appeal that the trial court erred in denying his motion for a mistrial during the prosecutor's closing argument. In arguing to the jury regarding appellant's claimed defense of duress, the prosecutor listed the series of crimes in which the brothers participated, culminating in their return to Arkansas from Oklahoma, and then said, "On and on and on, and then they come back here because of the storm. Then the man, the truck driver, brutally murdered . . .," a reference to Chauncey's alleged murder of a truck driver at a rest stop. Appellant had testified that he had seen a dark-skinned man at the rest stop, then watched his brother enter the restroom behind the man. Appellant later saw on television that the man had been murdered at the rest stop, and spoke with his brother about what he had seen on the news.

Appellant moved for a mistrial, claiming that there was no evidence that anyone had been brutally murdered, but that the prosecutor had claimed that he was involved in a brutal murder. The trial court found that there was evidence that appellant had seen a news story about the murder and discussed it with his brother. The court denied the motion for a mistrial and declined appellant's request for an immediate admonition to the jury, but directed the prosecutor to "move away" from discussing the murder further. The jury had already been instructed that closing arguments of the attorneys were not evidence, and that the jurors were to disregard any argument having no basis in the evidence.

 In *Cobbs v. State*, 292 Ark. 188, 728 S.W. 2d 957 (1987), this court held that in reviewing an allegedly improper closing argument,

> it is the duty of the appellate court to look to the remarks, and weigh their probable effect upon the issues; then to the action of the trial court in dealing with them; and if the trial court has not properly eliminated their sinister effect, and they seem to have created prejudice, and *likely produced a verdict not otherwise obtainable*, then the appellate court should reverse. However, a wide range of discretion must be allowed the circuit judges in dealing

with the subject, for they can best determine at the time the effect of unwarranted argument; . . .

*Cobbs*, 292 Ark. at 192, 728 S.W. 2d at 958 (emphasis added).

Here, while there was no direct evidence that Chauncey murdered the man at the rest stop, there was evidence that appellant saw Chauncey follow the man into the restroom and that appellant confronted Chauncey following a news account of the murder. This was but one reference in a series of actions which had been admitted into evidence for the purpose of challenging appellant's claimed affirmative defense of duress. Even if the prosecutor's statement was provocative, the trial court had properly admonished the jury not to consider arguments of counsel unsupported by the evidence. The trial court is in the best position to decide the issue of prejudice because of its first-hand observation. *Puckett v. State*, 324 Ark. 81, 87, 918 S.W. 2d 707, 710 (1996). A mistrial is a drastic remedy which should only be used where there has been an error so prejudicial that justice cannot be served by continuing the trial or when the fundamental fairness of the trial itself has been manifestly affected. *Puckett*, 324 Ark. at 89, 918 S.W. 2d at 711-12. The trial court has wide discretion in granting or denying a motion for a mistrial, and absent an abuse of that discretion, the trial court's decision to deny a motion for a mistrial will not be disturbed. *Id.*

Even assuming that these comments by the prosecutor were inappropriate and prejudicial to appellant, the evidence presented of Barr's guilt at trial was overwhelming and the fundamental fairness of the trial was not compromised. As we pointed out in *Kidd v. State*, 330 Ark. 479, 955 S.W. 505 (1997), when the evidence of guilt is overwhelming and the error is slight, we can declare that the error was harmless and affirm. *Kidd*, 330 Ark. at 485, 955 S.W. 2d at 508, *citing Hicks v. State*, 327 Ark. 652, 941 S.W.2d 387 (1997) (the admission of additional drug paraphernalia was harmless error where there was overwhelming evidence to support convictions for delivery of controlled substances and possession of controlled substances with intent to deliver); *Abernathy v. State*, 325 Ark. 61, 925 S.W.2d 380 (1996) (harmless error shown where trial court erred in admitting testimony of a prior bad act, which was remote in time and unconnected to the crime

at issue); *Stanley v. State*, 324 Ark. 310, 920 S.W.2d 835 (1996) (prosecutor's opening-statement reference to other offenses that occurred in another county held not reversible error because there was overwhelming evidence of defendant's guilt). See also *Kidd v. State*, 330 Ark. 479, 955 S.W. 2d 505 (1997); *Heard v. State*, 322 Ark. 553, 910 S.W.2d 663 (1995); *Rockett v. State*, 318 Ark. 831, 890 S.W.2d 235 (1994); *Greene v. State*, 317 Ark. 350, 878 S.W.2d 384 (1994). In light of the overwhelming evidence of appellant's guilt, it cannot be said that the prosecutor's remark resulted in a verdict "not otherwise obtainable." We affirm on this point as well.

## V. Rule 4-3(h)Review

As required by Ark. Sup. Ct. R. 4-3(h), the record has been reviewed for other reversible error, and none is found. Therefore, we affirm.

Affirmed.