Brandon FLOWERS *v.* STATE of Arkansas

CR 99-1497                                        25 S.W.3d 422

Supreme Court of Arkansas
Opinion delivered September 14, 2000

*William M. Howard, Jr.,* for appellant.

*Mark Pryor,* Att'y Gen., by: *C. Joseph Cordi, Jr.,* Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant Brandon Flowers was convicted of capital murder and sentenced to life imprisonment without parole. Appellant argues two points of appeal. He first challenges the sufficiency of the evidence on grounds that (a) there was insufficient evidence that the victim was killed during a robbery; (b) the testimony by his accomplices was not corroborated; (c) there was insufficient evidence that the victim's death was caused under circumstances manifesting extreme indifference to the value of human life; and (d) appellant had an alibi. With respect to each of these arguments, we hold the evidence was sufficient. For his second point on appeal, appellant argues that the trial court erred in failing to dismiss a juror who had a prior association with the victim and his family. In making this argument to the trial court, appellant only asserted that the juror's prior association with the victim might have some impact on the penalty-phase verdict. We hold that this point became moot when the jury did not render a penalty-phase verdict. We affirm the judgment.

On June 19, 1998, Patrick Brown was killed in front of an apartment building at No. 12 Tulip Cove in Pine Bluff, Arkansas. According to the medical examiner, Brown died of a gunshot wound to the chest. Several witnesses testified that a dice game was being held at No. 12 Tulip Cove on the night of the killing. Witnesses at the scene also reported seeing Brown in front of the apartment building when three armed men approached the apartment. Immediately thereafter, witnesses heard a gunshot and then discovered that Brown had been shot.

Testimony at trial indicated that shortly before the shooting Flowers and four other men had gathered on Amis Street in Pine Bluff and discussed robbing the dice game at No. 12 Tulip Cove. The five men then left Amis Street in a car with the purpose of robbing the dice game. Upon reaching Tulip Cove, two men

remained in the car while Flowers and his other two companions approached the apartment building armed with guns. Within minutes, the shot that killed Brown was fired. Shortly after the shooting, police developed a list of suspects that included Flowers. For the next eight or nine days, police attempted unsuccessfully to make contact with Flowers at his home. When Flowers was eventually found, he admitted to the police officers that he had been hiding from them. Flowers also denied knowing any of the people involved in the shooting and stated that he was at home during the shooting with his father and brother. His father and brother failed to confirm his alibi. Flowers was arrested and charged with capital murder in Jefferson County Circuit Court. On May 19, 1999, a jury convicted Flowers of capital murder. The trial judge then sentenced him to life imprisonment without parole because the State had waived the death penalty.

## I. Insufficient Evidence

We first address Flowers's claim that there was insufficient evidence to support the verdict. A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Barr v. State*, 336 Ark. 220, 984 S.W.2d 792 (1999). The test for such motions is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Peeler v. State*, 326 Ark. 423, 932 S.W.2d 312 (1996); *Ferrell v. State*, 325 Ark. 455, 929 S.W.2d 697 (1996). On appeal, we review the evidence in the light most favorable to the appellee and consider only the evidence that supports the verdict. *Barr v. State*, supra.

According to the record in this case, Flowers was convicted of capital murder pursuant to the felony-murder provision of the capital-murder statute. Arkansas Code Annotated section 5-10-101(a)(1) (Repl. 1997) provides that:

(a) A person commits capital murder if:

(1) Acting alone or with one (1) or more other persons, he commits or attempts to commit rape, kidnapping, vehicular piracy, robbery, burglary, a felony violation of the Uniform Controlled

Substances Act §§5-64-101 - 5-64-608, involving an actual delivery of a controlled substance, or escape in the first degree, and in the course of and in furtherance of the felony, or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life[.]

■ Flowers first asserts that the prosecution failed to prove with substantial evidence that the victim, Patrick Brown, was killed *during a robbery*. Flowers is correct that the underlying felony is an essential element of a capital-felony murder charge. *Cozzaglio v. State*, 289 Ark. 33, 709 S.W.2d 70 (1986). To prove capital-felony murder, the State must first prove the felony. *Id.* Nevertheless, his assertion lacks merit because the prosecution was not required to prove that a robbery occurred in order for Flowers to be convicted of capital-felony murder. Instead, the prosecution only needed to prove that Flowers, acting alone or with his accomplices, *attempted* to commit robbery. Ark. Code Ann. § 5-10-101(a)(1); *Novak v. State*, 287 Ark. 271, 698 S.W.2d 499 (1985). An attempted robbery is established by proof that the defendant purposely engaged in conduct that constituted a substantial step in a course of conduct intended to culminate in the commission of a robbery. Ark. Code Ann. § 5-3-201(a)(2) (Repl. 1997).

Dante Wesley testified on behalf of the State that on June 19, 1998, he and Derek Taylor had been to two "dice houses" in Pine Bluff. After they left the second gambling house located at No. 12 Tulip Cove, Taylor began a discussion with Wesley about robbing the gambling house on Tulip Cove. Wesley and Taylor then drove to Amis Street in Pine Bluff where they met Flowers, Andrew Gardner, Jermaine McBride, and Ervin Robinson. Upon arriving at Amis Street, Taylor got out of his car and began talking to the other men. According to Wesley, the conversation that Taylor had with these men was consistent with what he and Taylor had discussed while alone in the car; that is, robbing the gambling house on Tulip Cove. Following this conversation, Flowers, Gardner, Robinson, McBride, and Taylor then left Amis Street together in Taylor's car. Wesley did not accompany them.

Andrew Gardner also testified on behalf of the State that on June 19, 1998, he, Flowers, McBride, and Robinson were together

on Amis Street when Wesley and Taylor drove up and talked to them about robbing a gambling house. He further testified that everyone in his group, including Flowers, left Amis Street and went with Taylor in his car to some apartments on Tulip Cove "to rob a gambling house." Upon reaching Tulip Cove, Flowers, McBride, and Robinson, each armed with guns, got out of the car and approached the building with the purpose of robbing the gambling house. About one minute after the three men approached the front of the building, Gardner heard a shot fired. Fifteen seconds later, Flowers and Robinson ran back to the car where Taylor and Gardner had been waiting. All four men fled from the scene in the car driven by Taylor. He dropped Flowers and Robinson off at a baseball field before going onto another location where he picked up McBride. According to Gardner, Robinson and Flowers had approached the front of the house together and Robinson stated later that he thought he was the one who did the shooting that night.

Robert Moon, Colby Cobb, and Shamelia Harvey were all at or near the gambling house on Tulip Cove on the night of June 19, 1998. Moon and Harvey testified that Brown was in front of the building when three men approached the house shortly before the gunshot was fired. Moon identified Flowers from a photo-lineup as one of the men that he had seen in front of the house just before the shooting. Cobb, who was inside the gambling house, reported that McBride entered the house with a gun just before Brown was shot in front of the house.

■ From the testimony set out above, we conclude that the State presented substantial evidence that Flowers and his accomplices purposely engaged in conduct that constituted a substantial step in a course of conduct intended to culminate in the commission of a robbery. Specifically, there was evidence that Flowers and the other men intended to rob the gambling house on Tulip Cove, and that they took a substantial step in that direction when they approached the house armed with guns. Accordingly, we hold that there was sufficient evidence for the jury to find that Flowers committed the underlying felony of attempted robbery.

■■ Flowers next argues that the evidence against him was insufficient because he cannot be convicted on the uncorroborated

testimony of an accomplice. With regard to accomplice testimony, Ark. Code Ann. § 16-89-111 (1987) states:

> A conviction cannot be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof.

Ark. Code Ann. 16-89-111 (1987). The corroboration must be sufficient standing alone to establish the commission of the offense and tend to connect the defendant with it. *Peeler v. State*, 326 Ark. 423, 932 S.W.2d 312 (1996). The test for corroborating evidence is whether, if the testimony of the accomplice were totally eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission. *Id.* Corroborating evidence need not, however, be so substantial in and of itself to sustain a conviction. *McGehee v. State*, 338 Ark. 152, 992 S.W.2d 110 (1999); *Peeler v. State, supra.*

■ In this case, the State presented the testimony of several witnesses who were not accomplices. The medical examiner testified that Brown died of a gunshot wound to the chest. Dante Wesley testified that Flowers was involved in a conversation with his accomplices about robbing the dice game at Tulip Cove. Robert Moon identified Flowers from a photo-lineup as one of the men who approached the front of the building on Tulip Cove just before Brown was shot. Shamelia Harvey testified that three or four men approached the house and one of them was facing Brown just before she heard the gunshot that killed him. We conclude that this testimony provides sufficient evidence that a murder occurred during an attempted robbery and that Flowers was connected with it. Furthermore, Detective J.D. Cannon of the Pine Bluff Police Department testified that he and other officers tried unsuccessfully to make contact with Flowers for eight or nine days after the shooting. Officer Cannon also stated that when Flowers was found, he admitted that he had been hiding from the police. Evidence of flight to avoid arrest may be considered by the jury as corroborative of guilt. *Cooper v. State*, 317 Ark. 485, 879 S.W.2d 405 (1994). We therefore hold that the State presented sufficient evidence to corroborate the testimony of Flowers's accomplices.

Flowers next contends that the capital-murder element of "under circumstances manifesting extreme indifference to the value of human life" was not proven with sufficient evidence. Again, we disagree. The words "manifesting extreme indifference to the value of human life" indicate that the perpetrator of capital murder must act with deliberate conduct that culminates in the death of some person. *Sanford v. State*, 331 Ark. 334, 962 S.W.2d 335 (1998). Additionally, intent may be inferred from the type of weapon used; the manner of use; and the nature, extent, and location of the trauma suffered by the victim. *Id.* The State's evidence established that Brown died as the result of a large-caliber gunshot wound to his chest and that the gun was fired from approximately one to two-and-a-half feet away. Furthermore, there was evidence that Flowers and two of his accomplices were armed when they approached the gambling house at Tulip Cove with the purpose of committing a robbery. Based on this record, we conclude that there was sufficient evidence for the jury to find that Brown was killed under circumstances manifesting extreme indifference to the value of human life.

In making his challenge to the sufficiency of the evidence, Flowers additionally argues that the evidence was insufficient because he presented an alibi defense. This argument is also without merit, because on appeal we review the evidence in the light most favorable to the appellee and consider only the evidence that supports the verdict. *Barr v. State*, supra.

## II. Juror Dismissal

For his second point on appeal, Flowers contends that the trial court erred in failing to dismiss a juror who revealed to the court after the trial began that he had been the victim's Little League coach years earlier. During the first recess after the state began to present its case-in-chief, Juror Taylor informed the trial court in chambers that when he saw the autopsy photographs, he recognized the victim as having been a player on his Little League baseball team seven or eight years prior to the trial. Juror Taylor also stated that he had become acquainted with the victim's parents during that time. Upon learning this, the trial judge asked Taylor whether or

not his association with the victim would affect his deliberations as a juror. Juror Taylor responded:

> I don't think it would have anything to do with finding guilt or innocence. If we did find him guilty and it came to a sentencing phase, I'm not sure. I remember them being very good people. Patrick being a very fine young man. If we were to find him guilty, whether that would have any bearing or not on the severity of the penalty, I'm not real sure to be honest with you.

After further questioning by the trial judge, however, Juror Taylor stated that he thought he could be as objective as anyone else at both phases of the trial. Flowers's attorney then questioned Juror Taylor, who again stated that he thought he could be objective at both the guilt and sentencing phases of the trial. Juror Taylor was then excused, and Flowers moved to dismiss Taylor from the jury and replace him with the alternate juror. The trial judge declined to make a ruling at that time, but instead stated that Juror Taylor could remain on the jury for the time being and that Flowers "could renew [his] motion or make a better record on it or ask the Court to go on and make a ruling. . . before we submit [the case] to the jury." At the conclusion of the second day of the trial, the trial judge summoned Juror Taylor to his chambers and again asked him whether his prior association with the victim's family might influence his "thinking processes in coming up with a verdict in this case." Juror Taylor responded that he did not "think it would be any problem at all" at either phase of the trial. Following this colloquy, Flowers did not renew his motion and the trial court did not make a ruling. On the morning of the third day of the trial, Flowers renewed his motion to excuse Juror Taylor:

> DEFENSE COUNSEL: I might as well make a motion to excuse him for cause based on the revelation that he made in relation to being the Little League or baseball coach of the victim and knowing the family, the father and I think that that [sic] connection even though it has been several years may, if we get to the penalty phase, it may have some impact on his decision-making.

The trial court denied this motion.

█ █ In renewing his motion to dismiss Juror Taylor, Flowers limited his argument to the impact that the juror's prior association with the victim might have on the penalty phase of the

trial. Thus, Flowers obtained no ruling by the trial court on the impact that the juror's prior association with the victim might have on the guilt phase of the trial. Issues not ruled on below will not be considered on appeal. *Beshears v. State*, 340 Ark. 70, 8 S.W.3d 32 (2000). Furthermore, Juror Taylor's initial uncertainty regarding his ability to be objective at the sentencing phase is of no consequence here because the State had waived the death penalty. Therefore, the trial court imposed the only possible penalty for a capital-murder conviction: life imprisonment without parole. Ark. Code Ann. § 5-10-101(c) (Repl. 1997). Under these circumstances, we hold that Flowers's second point on appeal became moot when the jury did not render a penalty-phase verdict.

### III. Arkansas Supreme Court Rule 4-3(h)

The transcript of the record in this case has been reviewed in accordance with our Rule 4-3(h) which requires, in cases in which there is a sentence to life imprisonment or death, that we review all prejudicial errors in accordance with Ark. Code Ann. § 16-91-113(a). None have been found.

Affirmed.