Roy BRESHEARS *v.* STATE of Arkansas

CA CR 03-43                                    119 S.W.3d 61

Court of Appeals of Arkansas
Division III
Opinion delivered October 1, 2003

*The Cannon Law Firm, P.L.C.*, by: *David R. Cannon*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.

JOSEPHINE LINKER HART, Judge. Appellant, Roy Breshears, was convicted of the crimes of possession of methamphetamine and possession of drug paraphernalia and was sentenced to thirteen years on each count with the sentences to run consecutively. For his sole issue on appeal, he argues that his convictions were based only upon uncorroborated accomplice testimony, and therefore, the trial court erred in failing to grant his motions for directed verdict on the two charges. We affirm.

The State's evidence at trial was as follows: On February 8, 2001, Detective Michael Hardester and Detective Mike Frost, both of the Saline County Sheriff's Department, went to a residence in Saline County. After knocking at the front door and receiving no answer, the officers walked to the back of the residence. From there, they heard noises coming from inside, and again they knocked at the front door, but no one answered.

After twenty minutes, the mother of Heather Hanson arrived and stated that she thought her daughter was there, noting that Hanson's car was parked outside. Hanson's mother, who had a key to the residence, opened the door, letting Hardester enter. With the mother's consent, Frost walked over to an unused commercial chicken house that stood approximately 150 feet from the residence.

When Hardester first entered, he noticed a strong chemical odor he associated with the manufacture of methamphetamine. He found Misty Summerville standing in the living room. Heather Hanson walked in from the master bedroom. While speaking with the two, Hardester noticed that someone in the master bedroom was moving around under a pile of clothes in a closet. When Hardester heard someone yell, he ran into the room, called the person (who was identified as appellant) out of the closet, and placed him in handcuffs. Appellant stated that he was hiding because he was afraid; however, he only shrugged his shoulders when asked why he was afraid.

As Hardester walked through the residence to determine whether anyone else was hiding, he noticed by the kitchen sink a small glass jar containing a liquid with a red powder sediment. He believed it to be red phosphorus, a substance used in one process

for manufacturing methamphetamine. It was later identified as a combination of acid and phosphorus. In the drain board next to the sink he saw a plastic bottle with attached tubing that, in his experience, is used in the manufacture of methamphetamine. He then ordered everyone to exit the residence.

After Hardester exited the residence, he went with Detective Frost to the chicken house, where Frost had found a plastic bottle with attached tubing that appeared to be an HCl generator, an item used in the manufacture of methamphetamine. In a trash bag they found other items associated with the manufacture of methamphetamine.

Hardester obtained a search warrant, and other officers participated in a search of the area, recovering various items connected to the manufacture of methamphetamine. In the kitchen refrigerator, officers found a fake Pepsi can containing a powder substance in a plastic bag. The powder was later determined to be 2.921 grams of adulterated methamphetamine. Other items collected from the kitchen area included a pill blender, a plastic lighter, a glass funnel, and various cans and bottles labeled as camp fuel, drain cleaner, acetone, muriatic acid, and lye. In the master bedroom, officers found clear plastic tubing with reddish staining inside the tube and a small, hand-held torch lighter. A glass beaker wrapped in men's clothing and two cans of camp fuel were found in the laundry room. Also, various electronics were found in the residence, including two scanners, two pair of night-vision goggles, a sound device used to detect movement, and a closed-circuit video monitoring device attached to an outside camera.

Heather Hanson testified that in February of 2001 she lived at the residence with Misty Summerville. Hanson and appellant, who were reestablishing a previous relationship, had been dating for two weeks, and he was also living at this residence. During this time, she and appellant had agreed to manufacture methamphetamine, and with Summerville's assistance, they gathered the materials necessary for a "small cook." On the evening of February 7, 2001, they brought the materials back to the residence, and appellant manufactured methamphetamine in the kitchen. Upon completing the cook, the three smoked some of the methamphetamine. Hanson fell asleep, and appellant later woke her, telling her that the police were there. She did not answer the door, but from the bed in the master bedroom watched the police on the video monitor until the police turned off the electricity. Her mother

opened the door for the police, and Hanson left the master bedroom to ask what was going on. She testified that appellant was hiding in the closet.

Misty Summerville testified that she lived at the residence with Hanson and appellant, with Hanson and appellant sleeping in the master bedroom. According to Summerville, the night before their arrest appellant was manufacturing methamphetamine in the kitchen. Summerville admitted to smoking some of the methamphetamine before going to sleep in her bedroom. She awoke to an officer knocking at the door, and she listened to the police on the scanner until the police turned off the electricity. She testified that when the police entered the residence, Hanson told them that appellant was in her room, and the police found appellant hiding in the closet.

Citing statutory authority, appellant argues on appeal that his convictions for possession of drug paraphernalia and possession of methamphetamine should be dismissed because the testimony of Hanson and Summerville, as his accomplices, was uncorroborated. That statute provides that "[a] conviction ... cannot be had in any case of felony upon the testimony of an accomplice ... unless corroborated by other evidence tending to connect the defendant ... with the commission of the offense." Ark. Code Ann. § 16-89-111(e)(1)(A) (Supp. 2003). Further, the statute provides that "[t]he corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof." Ark. Code Ann. § 16-89-111(e)(1)(B) (Supp. 2003).

Appellant further relies on *Miles v. State*, 76 Ark. App. 255, 64 S.W.3d 759 (2001), which he argues is factually indistinguishable from the present case. There, police saw Miles and another man exit a bedroom in a residence owned by a third person. The bedroom contained several items used in the manufacture of methamphetamine, and the entire residence had the odor of a methamphetamine laboratory. The issue on appeal was whether there was sufficient corroboration of the accomplice's testimony, who, as the owner of the residence, testified that Miles had manufactured methamphetamine at the residence and had spent several nights every week there.

In *Miles*, this court noted that the corroborating evidence did not have to be sufficient, standing alone, to sustain the conviction, but the evidence must, to a substantial degree, tend to

connect the defendant with the commission of the crime. Further, we stated that the corroborating evidence may be circumstantial so long as it is substantial; evidence that merely raises a suspicion of guilt is insufficient. We also noted that the accused's proximity to the crime, opportunity to commit the crime, and association with a person involved in the crime, are all relevant facts in determining the connection of an accomplice with the crime, but proof that merely places the defendant near the scene of a crime is not sufficient. This court further observed that in reviewing the issue on appeal, we eliminate the accomplice's testimony and examine the other evidence to determine whether it independently established the crime and connected appellant with its commission.

While concluding in *Miles* that the remaining evidence was sufficient to independently establish the crimes of possession of methamphetamine and possession of drug paraphernalia, we noted that the only evidence connecting Miles to the commission of the offenses was that he was walking out of a bedroom in the accomplice's residence when the police arrived. We observed that while constructive possession may be implied when the contraband is in the joint control of the accused and another person, joint occupancy, standing alone, is insufficient to establish possession or joint possession, and the State is also required to show that the accused exercised care, control, and management over the contraband and knew that the matter possessed was contraband. Our holding was that there was no evidence, other than the accomplice's testimony, to show that Miles exercised care, control, or management over the contraband that was found in the accomplice's home, and the case was reversed and dismissed.

Appellant concludes that the present case is controlled by this court's holding in *Miles*. He contends that the cases are almost factually identical: both appellant and Miles were arrested in a residence owned by someone else and neither had actual possession of any controlled substance or drug paraphernalia. We also add that in both residences, there was an odor as well as drug paraphernalia associated with the manufacture of methamphetamine. Appellant concludes that in the present case, the State failed to corroborate the testimony of the accomplices that he exercised care, control, and management over the contraband and knew that the matter possessed was contraband.

We note, however, that appellant did not raise his accomplice-corroboration argument in his motions for a directed verdict on the possession of methamphetamine charge. Instead, he argued that possession of methamphetamine was a lesser-included offense of manufacturing methamphetamine, with which he was also charged, and that it constituted double jeopardy to charge him with both crimes. Also, he contended that there had not been any testimony that he "possessed anything," arguing further that although he was present in the residence, the residence was not his. Appellant's failure to raise his accomplice-corroboration argument when he moved for a directed verdict on the possession-of-methamphetamine charge precludes our review of this argument, and we affirm his conviction for possession of methamphetamine. *See Hutts v. State*, 342 Ark. 278, 28 S.W.3d 265 (2000)(holding that because defense counsel did not specifically challenge the sufficiency of the accomplice-corroboration evidence, the argument was not preserved for appellate review).

Appellant did properly preserve his accomplice-corroboration argument on the charge of possession of drug paraphernalia. We conclude, however, that this case is distinguishable from *Miles* and affirm his conviction. In the present case, when the officer entered the residence, appellant was found hiding in a closet under a pile of clothes. The Arkansas Supreme Court has previously noted flight to avoid arrest can be considered as corroboration of evidence tending to establish guilt. *Flowers v. State*, 342 Ark. 45, 25 S.W.3d 422 (2000)(holding that flight to avoid arrest was corroborative of accomplice testimony); *Riddle v. State*, 303 Ark. 42, 791 S.W.2d 708 (1990)(holding that flight to avoid arrest was corroborative of constructive possession of a stolen vehicle). Likewise, evidence of an attempt to avoid detection and arrest could be considered as corroborative of guilt. *Ross v. State*, 346 Ark. 225, 57 S.W.3d 152 (2001). Thus, as in *Miles*, appellant was found in a residence containing drug paraphernalia and an odor associated with the manufacture of methamphetamine. Unlike *Miles*, appellant attempted to avoid detection and arrest. This evidence, along with appellant's presence in the residence and the presence of drug paraphernalia and an odor associated with the manufacture of methamphetamine, corroborates the testimony of the accomplices and tends to connect appellant with the commission of the offense of possession of drug paraphernalia.

Affirmed.

CRABTREE and ROAF, JJ., agree.